IN THE

# COURT OF APPEALS

OF

# MARYLAND.

---

JUNE TERM, 1846.

## JOHN DOUB vs. ABRAHAM BARNES, ET UX., J. T. MASON, ET UX., LYNCH AND CRAFT, ET AL.

If judgment creditors assent to a deed of trust made by their debtors, assigning real and personal property for their payment, according to their legal priorities; and by their conduct induce third parties to purchase such estate then bound by their judgments, and to believe that they would look to the trustees, and not to their liens, for payment of their claims, such conduct would furnish the purchasers a valid equitable defence, against the enforcement of the judgment liens by a re-sale, under execution.

It would be a fraud on the purchasers, after such conduct, to permit the creditors to enforce their judgments against such purchasers.

In such a case, it would not be necessary for the purchasers to see to the application of the purchase money.

Such a defence, however, could only be available on the ground of fraud; it could not be relied upon as a payment, surrender, or release, nor pleadable as such in a court of law.

Where the character of a defence is not such as that thereby a judgment will be vacated, but equity would prevent its enforcement in relation to certain property of the debtor, it would not constitute a defence at law.

Where the defendant in a judgment assigns property for its payment to trustees, one of whom was the attorney of record of the plaintiff, the fact that the plaintiff had suspended execution on his judgment, while he never acquiesced in the deed of trust, will not prevent to enforcement of his judgment at law against land on which his judgment was a lien, though sold by said trustees.

1    v.4

The attorney of record in a judgment has no authority to accept a deed of trust for his client.

To a bill by a *bona fide* purchaser, for an injunction, alleging, that certain debtors had conveyed property in trust for the payment of judgments, liens thereon, charging that the judgment creditors were aware of the trust, acquiesced in it, and designed to look to the proceeds of the land sold, and to be sold, under its provisions, for payment; the defendant, an assignee of some of the judgments, answered, that he had no personal knowledge of the complainant's equity, and denied the facts relied on in the bill, upon information which he had obtained. HELD : that such answer was not sufficient to dissolve the injunction.

Where short copies of judgments upon *sci. fac.*, which recited the names of the original defendants, *"and terre-tenants,"* without naming the latter, were filed with an injunction bill, upon a motion to dissolve after answer, the court will infer, that the trustees to whom the original defendants had assigned their land with power to sell, and all their vendees, were returned *terre-tenants*.

It is upon the ground of contribution, that all the *terre-tenants* are required to be made parties to a *scire facias ;* and any one tenant, who is made a party, may plead in abatement, that there are other *terre-tenants* who are not made parties. If he fail to do this, he cannot afterwards have contribution.

Where defendants at law assigned their lands to trustees for sale, to pay judgments according to their priorities, and they made sales, a purchaser who had not looked to the application of his purchase money, cannot, as against a judgment creditor who had not consented to the deed of trust, nor in any way acquiesced in it, require such creditor to proceed, *first*, against the land remaining unsold by the trustees, and *next*, against the land sold by the trustees after the sale made to such purchaser, in the reverse order of such sales.

As lands are sold for the payment of judgments under executions in this State, the debtor has not the right to compel the levy and execution of the writ upon all the lands.

A judgment against *terre-tenants*, gives the plaintiff a right to sell as much of the land as may be necessary to satisfy his claim ; and if any one of the *terre-tenants* is injured, he would have a right to go into equity to compel all with whom he stood in *equali jure*, to contribute : nor is such plaintiff compelled to suspend his execution, until the question of contribution shall be settled between the various defendants at law.

In the case of *Murphy vs. Cord*, 12 *Gill & John.*, 182, this court decided, that the lien of a judgment was not lost with the right to issue an immediate execution, and the lien remained for twelve years.

Where the debtor alienated lands subject to the lien of a judgment, before the right to issue an immediate execution was suspended, that is, within three years from the date of the judgment, a *scire facias* was unnecessary to affect the terre-tenants.

But where a *scire facias* was necessary to revive the judgment, whether by death or lapse of time, it was necessary against all the terre-tenants whose lands were to be affected by the judgment.

APPEAL from the Court of Chancery.

The bill in this cause, was filed on the 17th January 1846, by *John Doub*, of *Washington* county ; and alleged, that *Abraham Barnes* being indebted to divers persons, and many judgments having been recovered in the county court of said county against him, as principal debtor, and *Melchoir B. Mason* and *John Thompson Mason*, as his sureties; the said *A. B.* and *Margaret S. C.*, his wife, and the said *M. B. M.* and *J. T. M.*, by deed, dated on or about the 11th October 1839, conveyed unto *David G. Yost*, since deceased, and *William Price*, certain lands lying in *Washington* county aforesaid, parcels thereof belonging to the said *A. B.*, and other parcels unto *M. B. M.*, and other parcels unto the said *J. T. M., in trust,* among other things, to sell and dispose of said lands, and the proceeds thereof to apply to the payment of the creditors of the said *Abraham Barnes*, by judgment and otherwise, according to their just priorities ; and by said deed, the said *Barnes* likewise conveyed to said trustees a very large and valuable personal estate, for the purpose aforesaid ; that said trustees entered upon the execution of the trusts created and confided to them by the aforesaid deed, and at several times have sold parcels of said real estate to divers persons ; that is to say to *George Cromer, Francis Dodge*, &c., &c., and to *John Hanson Thomas* and your orator, and he files herewith a statement of the names of said purchasers, and dates and other particulars of said purchases ; and that he believes said trustees have sold and disposed of all the personal estate conveyed to them, as aforesaid, and that they have collected the proceeds of sales of the personal estate sold by them, as aforesaid, and also of all the parcels of real estate sold as aforesaid, (excepting of the parcels sold, as aforesaid, by them unto the said *J. H. T.;*) that at this moment he is not informed of any failure of duty on the part of said trustees, excepting as aforesaid, and as at present advised, and believes, the said trustees have discharged their duty in every particular: unless it may be that they have erred and violated their duty, in omitting to require payment from the said *J. H. T.*, of the purchase

money for the parcels of land, as aforesaid, sold to him. And your orator further charges, that he has paid said trustees the full amount of the purchase money, for the parcels of land so as aforesaid purchased by him, and which he charges were sold for their full value ; and he verily believes and charges, that said purchase money has been properly applied · by the said trustees, in execution of the trusts of the aforesaid deed, and of their duty as trustees, as aforesaid, and he therefore well hoped that he had acquired, by the conveyance of the said trustees to him, of the land purchased by him as aforesaid, a perfect and unquestionable title, as against all the creditors of the aforesaid grantors and every of them ; but now, so it is, certain persons, that is to say, *Edmund Lynch* and *Jacob Craft,* having recovered judgments against the aforesaid grantors, prior to the execution of said deed of trust, have recently caused said judgments to be revived, have issued writs of *fieri facias* thereon, and have caused the same to be laid on the parcels of land, as aforesaid, purchased by your orator, with the purpose, as your orator is informed and believes, of coercing him to payment of said judgments ; and that the said *J. T. M.* hath also purchased up, (for sums far below their par value,) certain other judgments, which had been recovered by other persons against said grantors, prior to the execution of said deed of trust, and hath caused the same to be revived, and to be entered for the use of his wife, *Margaret A. Mason;* and executions to be thereon issued and laid on the land, as aforesaid, purchased by your orator, and for the purpose of coercing your orator to pay said judgments; all of which proceedings, independent of the actual motives operating on said parties, are, because of the unequal and unjust operation thereof on your orator, fraudulent in the estimation of this court, and your orator herewith files short copies of the judgments on which executions have issued, as aforesaid, &c.; and your orator charges, that the creditors issuing executions, as aforesaid, had notice of said deed of trust shortly after the making thereof, and acquiesced in the assumption by the trustees of control over said property, that they suspended all proceedings on their aforesaid judgments, and by other acts, indicative of their intention to

look for payment of their claims to the proceeds of sales which should be made by the trustees, gave credit to said trustees, and enabled said trustees to make sales more eligible to the creditors than could otherwise have been effected; and your orator expressly charges, that he was persuaded to purchase as aforesaid, and to make payments of the purchase money to said trustees, from his belief, (which he avers was well founded by the conduct of said creditors,) that the creditors would look to said trustees, and only to said trustees, for payment of their said claims out of the proceeds of sales to be made, as aforesaid; is therefore advised, that even assuming that he would otherwise have been compelled to see to the due application of the purchase money aforesaid, which he does not admit, yet, that under all the circumstances aforesaid, the said creditors ought to be confined to their remedy over against said trustees, for any misapplication of the proceeds of sales received by them; and as to the judgments, so as aforesaid purchased by the said *J. T. M.*, your orator is further advised, that if said judgments were purchased with the proper moneys of the said *Margaret A. Mason*, and are now properly assigned to her separate use, she would be chargeable with the notice which the said *J. T. M.* had at the time of such purchases. But he is further advised that, in the absence of proofs to the contrary, it ought to be assumed, that the said purchases were made with the proper moneys of the said *J. T. M.;* and further, that upon the entries as they now stand, the said judgments have vested beneficially in said *J. T. M.*, by virtue of his marital rights; and further to show the acquiescence and consent of said creditors to said trust, your orator charges, that at and for some time after the date of said deed of trust, the said *David G. Yost* was the attorney of record of the said *Henry Tiffany*, &c., and the said *William Price* was the attorney of record for the said *William McKim, John Trimble,* and *Lynch & Craft*. And your orator further charges, that if he is at all responsible for the due application of the moneys received by the trustees, as aforesaid, he is at the least, entitled to a discovery from the trustees, of the manner in which the moneys received by them have been appropriated; and to have any fund yet

remaining in their hands yet applied to his exoneration, and to the benefit of the incumbrances discharged by them for protection of his title ; and that in the meantime, and until the extent of your orator's just liability can be determined, the creditors aforesaid, ought to be restrained from proceedings against him, upon their executions aforesaid; your orator hereby offering to pay to said creditors such sums as, upon taking an account of said trust, shall be adjudged to be payable by him to them; and that this indulgence ought to be granted to him, the rather, since very many questions of priority must arise between the creditors of the said parties, if they are permitted to proceed on their incumbrances at law, which said questions cannot be determined in the country, and which, whilst they remain open, tend greatly to depreciate the value of your orator's land, and would, very probably, lead to its sale at a fearful undervalue. And your orator is further advised and charges, that the said trustees have yet on hand and undisposed of, about four hundred acres of said land, which are reasonably worth about fourteen thousand dollars; and that said creditors, if permitted at all to proceed with their said executions, ought to be required in the first instance, to exhaust their remedies against said unsold land, and if this should be insufficient to discharge the said executions, then the said creditors ought to proceed against the purchasers from said trustees, in the reverse order of their respective purchases; so that your orator ought not to be called on to contribute, until all the lands sold by said trustees, after the sales made unto your orator, as aforesaid, have been applied to the payment of said judgments; and your orator charges, that the said *John Hanson Thomas* made his purchases aforesaid, long after your orator had purchased; that, in fact, no part of the purchase money agreed to be paid by said *Thomas*, has been paid by him to said trustees: the said money being permitted to remain in his hands, under an impression entertained by said *Thomas* and the said trustees, that the trust fund, exclusive of the purchases made by said *Thomas*, would be sufficient to discharge all the judgments of older lien than a judgment which he had recovered against the said parties, and that consequently, that the money in the hands of

said *Thomas*, would be properly applicable to the payment of the incumbrances held by him; but in fact, this impression is so far groundless in the result, that the judgments on which executions have been issued as aforesaid, are prior in date and lien to the judgment claim of the said *Thomas:* hence there is, as your orator is advised, peculiar equity in requiring the said *Thomas* to pay in the amount of his purchases, as aforesaid, for the benefit of the aforesaid judgment creditors, before your orator is called on to pay a second time for the land which he purchased, and has already paid for. And your orator charges, that said *David G. Yost* has lately died intestate, and utterly insolvent, and that no administration has been taken out on his estate. The bill then prayed for a discovery by *Mason and wife* in relation to her separate estate; for an account by the trustees; that the complainant's title, as purchaser, might be protected; sale of the land, if necessary, in the reverse order of the purchases made from the trustees; for injunction against the judgment creditors; general relief and subpœna, &c.

With this bill was filed :—

The deed of trust of 11th October 1839, between *A. Barnes and wife, M. B. Mason* and *John T. Mason* of the one part, and *William Price* and *D. G. Yost* of the other part; reciting, that whereas *Abraham Barnes* is indebted in various sums of money, and is desirous to make adequate provision for the early payment of the same in full, in which the said *M. B.* and *J. T. M.* united, then conveyed a variety of real and personal estate, in trust, to sell the same; reserving to the grantors the right of user and occupation, &c., until a sale be made ; and after payment of expenses and trustees commissions, to apply the proceeds of said real estate "to the payment of all the debts of the said grantors, without any priority or preference, except as the same may exist by law ; and to apply the proceeds of the personal estate in like manner ; trustees not to be liable for deterioration, or misconduct of each other."

There were also filed, statements of sales of land, and a great number of short copies of judgments against the grantors, in the deed of trust. Some of the judgments were entered for the use of *Margaret A. Mason*.

The answer of *Margaret A. Mason*, wife of *John Thompson Mason*, alleged, that she knew nothing of the matters and things contained in complainant's bill; of the deed of trust executed by *A. Barnes and others*, of the contents and provisions of said deed, nor of its execution ; that before this defendant was married to the said *John Thompson Mason*, she united in a deed of settlement; appointing a certain *William Ebbs* her trustee, subsequently: to wit., in the month of July 1844, this defendant petitioned for the appointment of her said husband as trustee, in the place of the said *William Ebbs*, and, as she is informed, he was accordingly appointed. How the said *John Thompson Mason* has invested her property and funds, since his appointment as trustee, as aforesaid, this defendant is wholly ignorant and uninformed ; she prays that this honorable court may protect her rights, and pass such decree in the premises as will tend to that end.

The answer of *Edward Lynch* and *Jacob Craft*, admitted, that judgments were recovered in *Washington* county court against *A. B. M.*, *B. M.* and *J. T. M.* ; that said *A. B.* and his wife, *M. B. M.*, and *J. T. M.*, did, at or about the time stated in said bill of complaint, execute the deed of trust as is stated in said bill ; but these respondents deny that they ever saw or assented to said deed of trust, or in any way expressly or impliedly consented or agreed, in any manner, to waive their liens which were secured to them by their said judgments ; that they believe that said *Yost* and *Price* entered upon the performance of the trust of said deed, and have also sold large parcels of the estates so conveyed to them, but how much they have thus sold, or to whom sold, they are utterly ignorant, and therefore cannot admit or deny ; that they know nothing about what sales of personal property said trustees have made, nor what money they have received, nor how they have disbursed the same ; and these respondents do not know, and cannot therefore admit, that said *Doub* has paid to said trustees, the amount for which said trustees sold to said *Doub* the land, he, said *Doub*, purchased of them ; but they aver and insist, that their judgments are and were liens upon the land the said *Doub* did so purchase, and that it was the

duty of said *Doub* to have seen the liens upon said land released, before he paid the said purchase money to said trustees, and an omission so to do was neglect on his part, for which these respondents ought in nowise to suffer ; that they have recovered judgments against said *A. B., J. T. M.* and *M. B. M.*, prior to the execution of said deed of trust, and have also caused said judgments to be revived by *scire facias*, against said *Doub*, as one of the terre-tenants of said defendants, and have issued executions upon such revived judgments, in order to procure the payment of their said debts. But these respondents being utterly ignorant of any of these acts of *J. T. M.*, in reference to purchasing up judgments, as alleged in said bill, cannot either admit or deny the allegations in said bill, in reference thereto ; they deny that they ever acquiesced in, or assented to, the assumption of the trust by said *Yost* and *Price*, or that they ever did any act, or intended to do any act, by which they agreed or indicated an intention to agree, to look for the payment of their claims to the proceeds of sales which should be made by said trustees ; they further deny that said *Doub* was personally persuaded or induced to purchase said property, and to make payments therefor to said trustees, from a belief, either well or ill founded, from the conduct of these defendants, that they, these defendants, intended to look to said trustees, and only to said trustees for payment of their said claims out of the proceeds of sales to be made by said trustees ; and they further deny that any act of these defendants ever warranted or justified such an inference by said *Doub* ; they admit that said *William Price* was their attorney of record in the recovery of their said judgments as aforesaid, but are ignorant of said trustees having any part of the land conveyed to them, on hand, or what is its value ; and they also are ignorant of whom *John Hanson Thomas* bought, or for what he purchased, and whether he paid any part of the whole of his purchase, nor under what impressions his purchase money was allowed by said trustees to remain in his hands, nor what are said *Thomas'* liabilities :—Your respondents insisting, that they can have nothing to do with the controversies between said *Doub* and said *Thomas*, and should not be delayed in

the payments of their judgment claims, recovered against said *Doub* as terre-tenant, because he and said *Thomas*, or some one else, has or may have an account to settle between them and said trustees.

The answer of *John T. Mason* alleged, that out of the separate estate of his wife, he purchased, as her trustee, several of the judgments revived by *scire facias*, which were entered for her use; and showed, how that separate estate had been created by ante-nuptial contract. So far, however, as his answer was responsive to the equities alleged in the bill, his denials thereof were founded on information and hearsay of others. The opinions of this court, and of the dissenting judge thereof, sufficiently state his answer.

At March term 1846, the defendants, *J. T. Mason and wife*, and *Lynch & Craft*, moved for a dissolution of the injunction which had been granted upon the prayer of the bill, which the chancellor, (BLAND,) on the 11th March 1846, dissolved. The complainant appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE and MAGRUDER. J.

By ALEXANDER for the appellants, who cited :—2 *G. & J.*, 215. 1 *Bland* 199. 1 *Fonbl. Eq.*, book 1, ch. 3, sec. 4. 7 *Simons*, 1. 1 *Johns. Ch. Rep.*, 344. 10 *Engl. Ch. Rep.*, 340. 4 *Munf.*, 351. 3 *Sugd. Vendors*, 317, (453.) 5 *Peters*, 99. 3 *Co.*, 11 *v.* 5 *Johns. Ch. Rep.*, 235. 9 *Cowen*, 403. 1 *Johns. Ch. Rep.*, 447. 1 *Ves.*, 258. 10 *Engl. Ch. Rep.*, 488. 10 *S. & R.*, 450. 2 *Fonbl. Eq.*, book 2, ch. 6, sec. 2. 10 *G. & J.*, 295.

By J. T. MASON and McMAHON, who cited :—2 *Wm. Saund.*, 72, n. 4. 1 *Blackf. Ind., Rep.*, 401. 1 *John. Cases*, 492, 502. 12 *G. & J.*, 318. 10 *G. & J.*, 363. 1 *Pick.*, 347. 5 *Peters*, 113. 14 *Ser. & Raw*, 307. 1 *Dessau*, 309. 1 *Hill* 184. 5 *Stewart and Porter*, 34. 8 *John.*, 361. 10 *John.*, 220. 3 *J. J. Marshall*, 532. 11 *John.*, 464. 4 *Dessau*, 45. 5 *Vermont*. 1 *Porter Alab.*, 212. 1 *Call.*, 498.

4 *Munf.*, 351. 9 *Con. E. Chan.*, 449. 4 *John.* 353. 1 *Bland,* 137. *Sto. on Eq. Pl.*, 149. 1 *Blackf.*, 404. 1 *Watts Pen. R.*, 424. 5 *Watts,* 320. *Purdon's Digest,* 198. 1 *Har. and John.*, 471. 2 *Har. and John.*, 74. 3 *G. & J.*, 365. 12 *G. & J.*, 182. 9 *Wheat.*, 501. 3 *Bland,* 298. 19 *John.*, 493. 1 *Paige,* 185. 2 *Leigh,* 443.

When the case of *Murphy vs. Cord,* 12 *G. & J.*, 182, was cited in the argument, JUDGE CHAMBERS said :—

It was the decision of this court, and if an opinion had been filed in that case, would have been expressed—

1. That the lien of the judgment was not lost with the right to issue an immediate execution, as had been announced by the chancellor in 3 *Bland,* 298, and the lien remained for twelve years.

2. That when the debtor alienated lands subject to the lien of a judgment, before the right to issue an immediate execution was suspended, that is, within three years from the date of the judgment, a *scire facias* was unnecessary to affect the terre-tenants.

3. But where a *scire facias* was necessary to revive the judgment, whether by death or lapse of time, it was necessary against all the terre-tenants whose lands were to be affected by the judgment.

This was assented to by all the judges present.

MAGRUDER, J., delivered his opinion, as follows :

It is my opinion, that the order of the Chancellor dissolving the injunction in this case, ought to be affirmed, and that *Mrs. Mason,* (as well as the defendants, *Lynch* and *Craft,*) ought to be at liberty to issue executions on the judgments assigned to her. Some of the grounds of that opinion I will proceed to state.

In the course of the argument it was conceded, and indeed could not be denied, that the defendant, *Mrs. Mason,* was the *bona fide* owner of the judgments entered for her use, having paid for them a valuable consideration, and without knowledge of the now supposed equity of the complainant. It is more-

over not to be questioned, that not one cent of these judgments has been satisfied. It is also unquestionable, that if the complainant has any equity, the whole of it existed long before the judgments at law were *revived*.

Upon what then can the complainant ground his claim to relief in equity?

It appears that after the original judgments were rendered, the defendants at law executed a deed of trust, conveying to the trustees, with other property, the land afterwards purchased by the complainant. The creditors were not parties to that deed, and did not assent to its execution. But it is alleged, that "the complainant was induced to purchase as aforesaid, and to make payment of the purchase money to the said trustees, from his *belief*, (which he avers to be well founded *by the conduct of the creditors*,) that the creditors would look to said trustees for payment of their claims out of the proceeds of sales to be made, as aforesaid." It is also alleged, that the creditors "acquiesced in the assumption by the trustees, of control of said property, and by other acts," (nowhere specified,) "indicative of their intention, to look for payment of their claims to the proceeds of sale, which should be made by the trustees, gave credit to the said trustees, and enabled them to make sales more eligible to the creditors than could otherwise be effected." Now, with respect to those other acts, unless they were mentioned, of course they cannot be denied, and for obvious reasons allegations of this description can furnish no ground for an injunction. This, it is believed, is the whole equity of the complainant's case. There is something, indeed, said about the creditors having notice of the deed after its execution, but this furnishes the complainant with no title to relief. The defendants at law had a right to sell the land, and could authorise any person to sell it for them. To this the creditors, if apprized of the deed, or of the intention to execute it, could not object. It was the business of the purchaser to look to the provisions of that deed, and to ascertain what liens there were upon this land before he paid the purchase money, and to see to the application of the purchase money. No expression to be found in the deed of trust could mislead the complainant.

Doub *vs.* Barnes, *et al.*—1846.

The creditors never expressly agreed to surrender their remedy at law, and look to the trustees for the amount of their claim. This the complainant chose to infer from the conduct of the creditors,—and what was that conduct? He speaks indeed of "other acts," which he supposed would warrant his belief, but such expressions are to be disregarded, and the only circumstance mentioned in the bill is, that the judgment creditors "suspended all proceedings on their judgments," and this it seems led the complainant to believe, that they had in fact agreed to release their judgments, *as judgments*, and only to regard them as evidence of the amount of their claims, to be collected without having recourse to execution.

It surely cannot be in the power of the court of chancery to grant the relief which is sought in this case, when the claim to relief is founded on such a circumstance. A creditor may, if he thinks proper, forbear to execute his debtor as long as the law authorises him, without giving to third persons a right to infer that the claim is paid, or its payment is not to be enforced by execution. It is the purchaser's fault that he trusted the trustees, and did not enquire of the creditors whether they were disposed to trust them.

Dates, however, furnish an answer to all this. The judgments were obtained in October 1839, and much of the land was sold to the complainant early in the year 1840. Surely the creditors here were guilty of no *laches*, from which any individual had a right to infer, or "believe," that they designed to waive any remedy which the law afforded them.

The judgment creditors were not bound to take notice of the deed of trust, but the purchaser was. He claims under it, and the deed told him that the several judgments here in controversy, were each of them a lien on the land. It was then the obvious duty of the purchaser to enquire of these judgment creditors whether, if he purchased the land and paid the purchase money to the trustees, their deed would give him a valid title. Failing to do this, he cannot now ask that the judgment creditors should be deprived of the lien which their judgments gave them upon the land, and which it is nowhere asserted they afterwards agreed to release. The maxim: *Vigilantibus*

*non dormientibus leges subserviunt,* is applicable to debtors and purchasers, as well as to creditors. To afford relief to the complainant in this case, even if there was no other ground on which it ought to be refused, would be to allow him to take advantage of his own *laches,* when none can be imputed to the creditors.

There are other grounds for dissolving this injunction, some of which will be noticed.

The execution of the judgment obtained by *Lynch* and *Craft* is no longer to be stayed, and this, because in their answer to the bill, they deny that they ever saw or assented to the deed, or agreed to waive their lien on the land. The answer of *Mrs. Mason,* (which alone is to be considered here,) cannot in positive terms deny this knowledge and assent by the original creditors, (the persons who assigned the judgments to her,) and simply for this reason, the injunction, though it no longer is to restrain *Lynch* and *Craft* from suing out their executions, is to prevent all proceedings at law upon the judgments which have been assigned to *Mrs. Mason.*

Now, without stopping to enquire whether this equity, denied in the answer of *L.* and *C.,* is any where explicitly charged in the bill, it really does strike me, that there is very much less of equity in the case so far as *Mrs. Mason* is concerned in it, than is to be found in it, so far as it is a case between the complainant and *Lynch* and *Craft,* and depending upon their answer. All my reflection upon the subject brings me to the conclusion, that even admitting there were matters charged in the bill, which possibly might entitle the complainant to relief against *Lynch* and *Craft,* still, there can be found in them no ground whatever for interposing any delay, to the execution of the judgments which had become the property of *Mrs. Mason.*

We are often told, that the assignee of a bond or judgment, takes it subject to all equities which exist against the assignor. This, as a general rule, is correct; but then, circumstances may place the assignee in a better situation than the assignor would have been in, if he had remained the owner of the judgment. Of this we have happy illustrations in the case of *Kemp's executrix against McPherson,* 7 *H. & J.,* 320, and

in some of the cases there referred to; and also in the case before us. If in this case, the complainant could obtain relief, then he would be permitted to practice a deceit upon *Mrs. Mason.*

The complainant purchased most of the land in 1840, and yet took no steps in regard to the judgments, either to have the purchase money applied to their satisfaction, or to obtain from the then owner of the judgments, an acknowledgment that they were no longer a lien on the land.

In 1844, *sci. fas.* were issued to revive those judgments, and issued against him as terre-tenant of this land. Of course he was called upon to show cause, not simply why the judgments should not be revived, but also why *fi. fas.* issued upon those judgments should not be levied upon this land. Assuming then, that of any part of his supposed defence in equity he could not avail himself at law, yet it must be admitted, that whatever defence he now has in equity, has been equally so ever since the complainant paid the purchase money. To conceal that supposed equity, was to practice a fraud upon any person who might have become, or at any time afterwards became, a *bona fide* purchaser of the original judgment. It was his duty to make known that equity, in order to prevent others from being sufferers by the concealment of it. A *sci. fa.* was issued, and yet nothing was said of this *latent* equity. Instead of disputing the case any where, he consented to give a judgment against him, and thereby acknowledged upon the record that the whole debt is due, and that this land is answerable for the amount of it, and will be liable to be sold therefor, if the money be not paid before the expiration of the time, during which, by agreement, the execution is to be stayed. Surely this was declaring to *Mrs. Mason,* and all others who might be disposed to purchase these judgments, that if they had any doubts before, they might dismiss them; that the claim was undoubtedly good, at all events, so far as the land, when sold, would pay it; and he had agreed upon the record, that the land should be sold for the purpose, if the debt was not paid before the expiration of the eight months:—and is this a case in which the appellee is entitled to relief against the subsequent assignee of the judgment? Impossible.

If the complainant had any equity whatever, the whole of that equity existed when *Mrs. Mason* acquired an interest in these judgments, and had existed several years previously thereto ; and the defendant was bound to know, that any person had a right to purchase those judgments. The charge in fact is, that the original plaintiff sold to *Mrs. Mason*, as judgments in full force, judgments which, by his own acts or omissions, had ceased to be of any value *as judgments.* If this was so, then the complainant, in forbearing to set up his defence, either at law or in equity, in omitting to file his bill, at all events, so soon as the *sci. fas.* were issued, is himself to be regarded as guilty of the fraud which his neglect enabled, and was calculated to enable, the plaintiff at law to practise upon others. Moreover if this be so, then unquestionably the plaintiff at law is bound to refund to *Mrs. Mason* the money which she paid for the judgments. Surely, then, the decree of the court, which gives to this complainant the relief which he now asks, if it did not also give to *Mrs. Mason* relief against the assignors, ought to be evidence against him, in any proceeding which *Mrs. Mason* might be forced to institute against them, in order to recover back the money thus obtained from her *by false pretences.* But the decree in this case would be no evidence against the assignors, because they are no parties to the suit. They would then be at liberty to dispute her claim, founded upon the decree, and might insist, that if they had been parties to the suit, they would have filed answers, like that of *Lynch* and *Craft*, and thereby have secured to *Mrs. Mason* her money.

It was then a conclusive objection to the granting or continuing of this injunction, (so far as it restrained all legal proceedings upon *Mrs. Mason's* judgments,) that her assignors were not made parties to this suit, and that the complainant, by omitting to make them parties, deprived *Mrs. M.* of the answers, which, if given, we have a right to assume would have contained as explicit a denial of the charges, as are to be found in the answers of *L.* and *C.*

It is true, that when objections of this kind arise, we are often reminded, that in some of the books of equity practice,

we are told of cases in which though the assignor may be, yet he need not be, made a party. It will be difficult to find a book of equity practice of any reputation, which gives the slightest ground for the notion, that in any case like this, the assignor is not an indispensable party to the suit. I forbear to notice what the books of practice, to which we are referred, say upon the subject, because no foreign treatise of equity practice lately published, could influence my opinion on this question: and I choose here to say, why I thus express myself.

It is the practice to cite as authorities in the courts of *Maryland* every new book, the author of which has any reputation at home, and every decision of any court, with a report of which we are furnished. This is a sore grievance, and ought to be corrected. At the period of the revolution our courts had adopted for the administration of justice by them, rules, (some of them borrowed, and some not borrowed, from the courts of *England,*) deemed to be "applicable to our local and other circumstances;" and ever since the revolution, our General Assembly has claimed and exercised the right to regulate the practice, and enlarge or abridge the jurisdiction of the chancery court. Our chancery practice then, rightfully consists of what it was at the time of the revolution, and what it has since been made by our own legislation   To understand what it really is, its own decisions are authority, and these will show, that we have some equity, as we have some common law, for which we are not indebted, either to our own statute book, or to any description of law existing in England, at the time when we ought to have ceased to borrow law from her courts, or her legislature.

It is to an occasional forgetfulness of this, that we have decisions which can never be reconciled; and our system of equity, as settled by our forefathers, has been altered by decisions elsewhere, which, whatever be their merit elsewhere, ought not to be received *as authority* in the courts of Maryland.

It is as well settled in this State, and perhaps has been settled as long, and in the same way, that the assignor of a bond or judgment is an indispensable party to a suit in equity, to annul or to enforce it, as that the courts of common law may,

3   v.4

at the appearance term, grant to the defendant a writ of *retorno habendo,* in an action of replevin. Cases which make an assignor an indispensable party, and in which, for the want of such parties, decrees have been reversed, and the bill dismissed, it has not been thought necessary to report, if nothing else was decided in them. The legislature may make the law otherwise; the courts must not.

I deem it to be unnecessary to dwell upon another ground on which relief is sought, to wit: that there are other lands also liable, and other terre-tenants, who ought to have been made parties to the proceeding at law by *sci. fa.* This was unquestionably a good defence at law, but furnishes none in equity. It is a defence which the complainant chose to abandon, with other defences, when he entered a *fiat,* and in consideration of it obtained a stay for eight months.

I have all along spoken of *Mrs. M.,* as a *bona fide* purchaser for valuable consideration, of the judgments. Something which would seem to mean otherwise, is to be found in the bill of complaint; but besides being disproved by the answer, it was abandoned in the argument.

I cannot agree with the court, that *Mrs. Mason* ought not to have execution of her judgments.

ARCHER, C. J., delivered the opinion of this court.

The equity of the bill consists in the facts alleged, that after the rendition of the judgments against *Abraham Barnes, M. Mason* and *J. T. Mason,* a conveyance was executed by them for all their real estate in *Washington* county, and a large personal estate, to trustees, in trust, to pay their debts according to their legal priority; that such deed was made to *Messrs.* Yost and *Price,* who were attorneys of the judgment creditors, on the 11th of October 1839; that said deed of trust was made known to the judgment creditors shortly after its execution; that they acquiesced in the assumption by the trustees of control over the property conveyed; that they suspended all proceedings on their judgments; that by acts, indicative of their intention to look for payment of their claims to the proceeds of sales which should be made by the trustees, they gave credit

to the trustees, and enabled the trustees to make more eligible sales for the creditors than could otherwise be effected; that the complainant was persuaded to purchase and make payments, from a belief well founded in the conduct of the creditors, that they would look to the trustees, and only to the trustees, for payment of their claims out of the proceeds of sale to be made by them.

If the judgment creditors assented to the deed of trust, and by their conduct induced the complainant and others to become the purchaser of the lands bound by their judgments, and to believe that they would look to the trustees for the payment of their claims, and not to the liens created by their judgments, we cannot but believe that such conduct would furnish a valid equitable defence. To allow the judgment creditors, after such a course of conduct, to enforce their judgments against the purchasers, would be to permit them to perpetrate a fraud upon the purchasers. The obvious consequence of such a procedure on the part of the judgment creditors, would be to lull the purchasers into a false security, and to induce them to believe that a title would follow the payment of the purchase money. Upon the state of facts alleged, it would not be necessary for the purchasers to see to the application of the purchase money, credit being given to the trustees, and they being known to be alone looked to for the payment of the judgments by the proceeds of sale.

Such a defence could, however, be only available on the ground of fraud; it could not be relied upon as a payment, a surrender or release, and pleadable as such in a court of law. It is true, fraud is as well cognizable in a court of law as a court of equity; and it is contended, that if this be a defence, it should have been made available at law. The character of the defence is not such as that thereby, the judgments are vacated, but equity would prevent their enforcement, on the ground that to allow the judgment creditor, under the circumstances, to enforce the lien of their judgments, would be to enable them to perpetrate injustice on the purchasers.

The answer of the defendants, *Lynch* and *Craft,* explicitly denies all the equity as above referred to in the bill. They

deny that they ever assented to the deed of trust, or in any way expressly or impliedly consented or agreed in any manner to waive their liens, which were secured to them by their judgments; and again, they deny that they ever acquiesced or assented to the assumption of the trust by *Yost* and *Price*, or that they ever did any act, or intended to do any act by which they agreed or indicated an intention to look for the payment of their claims to the proceeds of sales, which should be made by the said trustees. They further deny that the complainant was persuaded or induced to purchase said property, and to make payments therefor to said trustees, from a belief, either well or ill founded from their conduct, that they intended to look to said trustees, and only to said trustees, for payment of their claims out of the proceeds of sale to be made by said trustees.

There would exist therefore, only two facts upon which the equity of the complainant is founded, which are not explicitly denied by the answer of *Lynch* and *Craft:* but the existence of these facts cannot affect the question under consideration. The facts referred to are, that *Mr.* *Price* was the attorney of *Lynch* and *Craft*, and that *Lynch* and *Craft* had suspended execution on their judgments. As attorney, *Mr.* *Price* had no authority to accept for his client the deed of trust in the record, and the suspension of procedings on the judgment could work no injury to *Lynch* and *Craft*, if it be true that they always looked to their judgments, and not to the deed of trust, for satisfaction.

The answer of *Mr.* *Mason* is subject to different considerations. He stands in the character of assignee of several of the judgments, and in his answer professes to have no personal knowledge of the averments, above adverted to, as constituting the equity of the complaint, and he denies the facts relied upon, only upon the information which he had obtained. We cannot, on this account, give to the answer the effect of dissolving the injunction. No case has been cited which would sanction such a result. The complainant is entitled to his equity, unless it shall be removed by positive averments in the answer, and not hearsay.

It is contended on the part of the appellant, that independent of any question of assent or acquiescence on the part of the creditors, the appellant is entitled on general principles of equity to insist, that the creditors shall proceed first, against the land yet remaining unsold and liable to execution, and next against the lands sold by the trustees, after the sales made to him in the reverse order of those sales, and that the lands so purchased by him shall not be made to contribute to the payment of said judgments, until after the funds before mentioned shall have been applied to that purpose.

The judgments having become dormant, were revived by *sci. fa.* against the original defendants and the terre-tenants. The proceedings before us do not show who were made terre-tenants; but as the judgments, filed as exhibits, show that these judgments were revived against the terre-tenants, we infer that all the vendees of the land, as well as the trustees, were returned terre-tenants.

The effect of such a judgment in *England,* where lands are extended and not sold, would be to give to any party defendant the right to coerce the plaintiff to take out execution against the lands of all the terre-tenants, by which means he would have the benefit of contribution, and if he took out execution against only one terre-tenant, relief would be granted by an *audita querela.* It is upon the ground of contribution that all the terre-tenants are required to be made parties, and any one tenant who is made a party, may plead in abatement, that there are other terre-tenants not made parties. If he fail to do this, he cannot afterwards have contribution.

The contribution thus secured by extending all the lands of the terre-tenants upon which the judgments were liens, operated upon each according to the value of the property of which he was tenant, so that the contribution was equal, and had no reference to the dates of the conveyances from the judgment debtor, by which they had become terre-tenants. 1 *Leigh.,* 144. Departures from this doctrine appear to have taken place in *New York.* We do not believe that they are consistent with the established law in the *English* courts. The most, therefore, that the complainant could claim, would be contribu-

tion from the vendees of the land, in proportion to the value of the land conveyed to each respectively.

As lands are sold for the payment of judgments under executions in this State, instead of being extended, the debtor has not, as in *England,* the right to compel the levy and execution of the writ upon all the lands.   The seizure and sale of all would be unnecessary and oppressive, because not necessary in many cases to satisfy the plaintiff's judgment.   The judgment against the terre-tenants gives the plaintiff a right to sell as much of the land as may be necessary to satisfy his claim, and if any one of the terre-tenants is injured, he would have a right to go into equity to compel all with whom he stood in *equali jure,* to contribute.

We do not think that the plaintiff who has obtained a judgment at law, should be compelled to suspend his execution, until the question of contribution shall be settled as between the various defendants in the judgment.   This principle appears to have been held by this court in the case of *McCormick* and *Gibson,* 10 *Gill & John.,* 65.

If there be lands not sold by the trustees, the defendants cannot be driven to resort for satisfaction to such lands.   It is obvious that such a proceeding would greatly delay satisfaction of their judgments, involve them in litigation, without a certainty of making such lands to the full extent available as a fund to meet the judgments.   Elder judgment creditors might intervene.   To compel the respondents to resort to these lands, the court ought clearly to see, that his resort to them would not be attended with difficulty, embarrassment, or delay.

The decree of the chancellor in so far as it dissolves the injunction against *Lynch* and *Craft,* is affirmed, and in so far as it dissolves the injunction against *J. T. Mason,* is reversed.

DECREE AFFIRMED IN PART, AND

REVERSED IN PART.