# Benjamin F. Reigle *vs.* Abraham Leiter and others.

A judgment debtor executed two mortgages of different portions of his estate, and after his death, upon a creditors bill making all incumbrancers parties, the judgment creditors assented to a sale, reserving their liens, and under the decree a portion of the estate covered by the elder mortgage was sold, and the proceeds brought into court for distribution. HELD:

That this fund must be applied to the prior judgments, and the rights of such judgment creditors cannot be suspended until questions of contribution or of subrogation can be adjusted, nor can they be compelled to resort to other lands yet unsold for the benefit of junior mortgagees.

The elder mortgagee, upon the application of this fund arising from the property covered by his mortgage to the payment of elder judgments, will be *subrogated* to the rights of such judgment creditors.

APPEAL from the Equity Side of the Circuit Court for Washington county.

In this case a bill was filed, on the 6th of March 1850, by the *general* creditors of Joseph Hollman, deceased, for the sale of his real estate, consisting of lots and town property in,

Williamsport and a farm in the country, all of which was bound by judgments recovered in 1837, 1838 and 1840, upon which executions had been issued and levied on his real estate before his death. A part of the town property was mortgaged to Reigle and others, by a mortgage dated the 1st of April 1843, and the farm was subsequently, on the 2nd of September 1844, mortgaged to Benjamin F. Hollman.

The bill made all the judgment creditors, as well as the subsequent mortgagees, parties, in order to give a clear title to the purchaser, and at the same time guarding the rights of the mortgagees and judgment creditors, by allowing them all the priorities they had received and were entitled to out of the proceeds of sale. The answers of the judgment creditors assented to the decree upon the express condition, that all their respective liens and priorities should be preserved, and a decree was accordingly passed on the 3rd of December 1850, and a trustee appointed for the sale of the whole real estate of the deceased.

The trustee sold the town property mortgaged to Reigle, and the proceeds being brought into court, were distributed by the auditor to pay the judgment creditors according to their priority. To the ratification of the account so distributing the funds Reigle excepted, and filed a petition insisting that the proceeds should be distributed to him in payment of his mortgage, and that the trustee should be compelled to sell the land conveyed by the junior mortgage to Benjamin F. Hollman, upon which the judgments are also a lien, before the judgment creditors can be permitted to have the funds in court applied to their judgments; and that the land so mortgaged to Hollman is more than sufficient to pay these judgments; and that unless he is allowed his claim out of the fund in court, on which he has a specific lien, he will be deprived of his rights under his mortgage. The judgment creditors answered this petition, objecting to the proceeding, and insist that they have no evidence or knowledge of the sufficiency of the land mortgaged to Hollman to pay their claims, and ought not to be delayed.

The court (PERRY, J.) overruled the exceptions and ratified the account, and accompanying the order so doing delivered the following opinion:

"'The bill filed in this case makes parties of all those who have liens upon the real estate of Joseph Hollman, deceased, and a decree was passed for the sale of the land of which he died seized. The decree does not fix or determine the priority of payment, but requires the trustee to bring the money arising from sales into court, to be distributed by its order. From the facts in the case it appears, that Hollman, (the intestate,) executed, on the 1st of April 1843, a mortgage to Corbey, Cunningham, Baker and Reigle, conveying lots Nos. 44 and 45, in Williamsport, and on the 2nd of September 1844, he made a mortgage to Benjamin F. Hollman, by which he conveyed, with sundry articles of personal property, part of his real estate, being a tract called 'Delacarlia,' containing about three hundred and thirty-nine acres. That Jervis Spencer, (the trustee,) appointed by the decree to sell, has sold, among other parcels of land, the lots mortgaged to Corbey, Cunningham, Baker and Reigle, the proceeds of which sale is now in the hands of the trustee, and has been audited and is ready to be distributed. Under these circumstances it is contended, that as no part of the land mortgaged to Benjamin F. Hollman has been sold, and as the mortgage executed for the benefit of Reigle has not been satisfied, and the judgments due the Hagerstown and Williamsport Banks are older in point of time and a prior lien, should they be paid out of the proceeds of the lots, the security of Reigle will be gone, and the lien of the judgments which bound the land conveyed to Benjamin F. Hollman, would be extinguished or satisfied to the injury of Reigle. The property on which Reigle has a mortgage having been sold to pay the judgments which were a lien upon the land mortgaged to Benjamin F. Hollman as well as that of Reigle, and the mortgage to Reigle being older, he, Reigle, insists, that the trustee should sell first the land conveyed by the junior mortgage before they, the creditors, are to be permitted to have the fund now in court applied to pay off those judgments. I do not think it necessary to comment particularly upon the numerous authorities adduced in the argument of this case. The cases found in 1 *Johns. Ch. Rep.*, 413, 447; 3 *Do.*, 391; 5 *Do.*, 235; 17 *Ves.*, and 3 *Coke's Rep.*, 13, would have much

weight and might control the determination of the cause, if it were not that the Court of Appeals of Maryland, (a tribunal of the highest legal authority, and whose decisions are always to be respected and esteemed of the most binding obligation,) has announced principles which I consider as peculiarly applicable to this case. The design of the petitioner is to obtain the action of the court, by which the judgment creditors are to be compelled to resort to other property than that which is embraced in their mortgage. That according to an equitable rule, when a creditor has a lien upon two funds, he may be compelled to resort to that which is not incumbered or secured to another; by which means the mortgage debt as well as the judgment creditor, it is contended, would be paid. In the case of *Gibson vs. McCormick*, 10 *G. & J.*, 65, where a bill was filed to sell the real estate of a deceased debtor to pay debts, the court determined that the question of contribution was one in which the complainants, (being a creditor of the deceased,) had no concern, and that a purchaser from one of the devisees under the will of the deceased debtor could not resist a decree for a sale, though such a state of things should have influence with the trustee in selecting such portions of the estate as may be necessary to sell, and that upon the principle of substitution, when the debts of creditors of the estate have been paid by a purchaser, or those claiming under him, from a devisee, he will be subrogated to the rights of the creditors whose debts he has paid.

" Also in the case of *Doub vs. Barnes*, 4 *Gill*, 1, the court say, they do not think that the plaintiff, who has obtained a judgment at law, should be compelled to suspend his execution until the question of contribution shall be settled as between the various defendants in the judgment, and if there be land not sold by the trustee, the defendants (judgment creditors) ' could not be driven to resort, for satisfaction, to such lands,' as it was obvious that such a proceeding would greatly delay satisfaction of the judgments, involve them in litigation, without a certainty of making such lands to the full extent available as a fund to meet the judgments, and to compel them to resort to those lands, the court ought clearly to see that the re-

sort to them would not be attended with difficulty, embarrassment or delay.'

"With these cases before me, I do not hesitate to determine, that the fund now in the hands of the trustee shall be applied to pay the judgments according to their priority, notwithstanding the fund thus applied is the proceeds of a sale of the property embraced in the mortgage intended to secure Reigle. To drive the judgment creditors to a sale of other land not affected by the petitioner's mortgage, would be such delay as the Court of Appeals has said a judgment creditor shall and ought not to be subjected to.

"If an application had been made to the court before a sale, and at such time as would have prevented delay, to have controlled the trustee as to such parts of the estate which he should sell, according to the case of *Gibson vs. McCormick*, 10 *G. & J.*, 107, this court, in the exercise of its discretion, may have directed a sale of that which was mortgaged to Hollman before the lots mortgaged to Reigle. Such is not the condition of this case, and no power exists to postpone the distribution of the money, in the absence of the assent of the judgment creditors. The property embraced in the mortgage to Reigle having been sold, and the proceeds having been applied to pay the judgment creditors, by which the lien of those judgments has been discharged, it might be thought that there exists no remedy for Reigle to be paid out of the lands of the deceased; that the judgment being a lien as well upon that which was mortgaged to them as that which was mortgaged to Benjamin F. Hollman, there is no mode or remedy by which they can be secured as against the junior mortgage. In this I do not agree. In the case of *Gibson vs. McCormick*, it will be seen that the court announced a doctrine in opposition to these views. That court allowed the principle of substitution to control in the distribution of the assets, and did not permit them to be ratably distributed between the creditors, without reference to the liens and priorities of the several claimants; and by the cases of *Tiernan vs. Rescaniere*, 10 *G. & J.*, 224; *Schnebly vs. Ragan*, 7 *G. & J.*, 121, the same equities which belong to the creditors whose debts are paid, are

secured to the party who pays it, and who becomes subrogated to all the liens and rights which were attached to the claim. Under this view of the law, after the payment of the proceeds of the lots to the prior incumbrances, the mortgagees of those lots will be substituted and stand in equity, entitled to the same rights which such creditors had as against Benjamin Hollman, and of course the debt as secured by the mortgage being older and entitled, in every view, to a preference over Benjamin Hollman, must be paid before Hollman's mortgage, should the future sales bring enough for that purpose.

"The parties having answered the petition filed in the case, I do not entertain any difficulty in respect to the condition of the pleadings and proofs to authorise this determination; and, indeed, the case of *Gibson vs. McCormick* is an authority which furnishes a sufficient precedent for this course. It may not be amiss to suggest, that in the event of my entertaining a different opinion in regard to the principles to govern me in this case, I perhaps could not have gratified the prayer of the petitioner, as I cannot see any thing by which it can be determined that the unsold property is of value sufficient to pay the judgments. In the absence of such a fact, the interposition of a court for the purpose suggested by the petition could not be claimed. The testimony to show that the mortgage debt due Reigle has been paid I do not esteem sufficient; it by no means proves such to have been done, and, of course, with the opinion above announced, all the rights secured by the mortgage as to his debt must be considered as still existing.

"The exceptions to the audit will be overruled, and the audit ratified. I will not dismiss the petition, as other sales are to be made and the rights of the mortgagees to be adjusted. The amount for which the property may sell and the sum to be distributed may or not present such an aspect to the case as to modify the views of this court. And in the absence of an admission as to the value of the unsold property, whether there will be funds enough to involve the necessity of a controversy as between them is yet to be seen. I cannot but regard the passage of a decree now as between these parties as premature, and will not pass a decree as to them until all the facts per-

taining to it shall be before the court, unless requested by the petitioner; when they are before the court a final decree will be passed."

From the order thus overruling his exceptions and ratifying the account, Reigle appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Richard H. Alvey* for the appellant, argued:

1st. That Reigle's mortgage being anterior in date to that to Hollman, an equity arises which subjects the land mortgaged to the latter to the payment of the judgments standing prior to the mortgage to the former, to the exoneration of the land mortgaged to him, or so much of the fund arising from the sale thereof as will discharge his debt. This precedency of time gives Reigle a clear advantage in right as against Hollman. 1 *Bibb.*, 523, *Clay vs. Smith.* 1 *Blackf.*, 91, *Gallion vs. M'Caslin.* At the date of Reigle's mortgage all the real estate of the mortgagor was equally bound by then existing judgments, which were general liens thereon, and if all except that mortgaged to Reigle had been applied to pay these judgments, upon no principle known could the mortgagor have claimed contribution from the land so mortgaged, but there would be a clear and strong equity to compel the mortgagor to exonerate and relieve such mortgaged estate from the payment of prior judgments. Nor will the mortgagor be permitted by any subsequent mortgage or transaction to increase the liability or incumbrance of the mortgaged estate to the prejudice of the mortgagee; for if such thing were permitted it would be in the power of every mortgagor, by collusion or design, to throw all the general charges and incumbrances upon his entire estate on a particular part of it, to the prejudice and injury of innocent third parties, who might purchase in good faith, and with every confidence that the general liens would be paid out of an abundant and ample estate remaining in the mortgagor at the time of taking his mortgage. There being then such strong equity as between the mortgagor and

mortgagee, and the former being restrained from increasing the liability of the mortgaged estate to the prejudice of the rights of the latter, the subsequent mortgagee of the different remaining estate subject to general prior liens, (as between whom and the first mortgagee there is no right of contribution,) must sit in the seat of the mortgagor in respect of the first mortgage and take the land with all its equitable burdens, and he will not be permitted to take any advantage from his mortgage to the prejudice of the first mortgagee, or whereby the latter's right may be defeated. And in order to effectuate this equity as between the mortgagor or his subsequent mortgagee, of different parts of the estate and the first mortgagee of other lands, a court of equity will compel the prior judgment creditors, whose judgments are general liens upon the whole estate, to resort first to the land in possession of the debtor himself, and if there be none, or not enough to pay their liens, then to the lands last sold or mortgaged, and so on in the inverse order of sales or mortgages, and the first purchaser or mortgagee is only liable for the deficiency after all the lands held by the debtor, subject to such liens subsequent to the first mortgage or sale, have been properly applied. 3 *Coke*, 11, *(b,) Sir William Harbert's case. Lloyd & Goold*, 252, *Averall vs. Wade.* 4 *Kent's Com.*, 179, *note.* 1 *Johns. Ch. Rep.*, 447, *Gill vs. Lyon.* 5 *Do.*, 235, *Clowes vs. Dickenson.* 8 *Paige*, 277, *Patty vs. Pease.* 9 *Do.*, 173, *Schryver vs. Teller. Ibid.*, 648, *Rathbone vs. Clark.* 2 *Green's Ch. Rep.*, 125, *Britton vs. Updike.* 3 *Do.*, 224, *Wikoff vs. Davis.* 1 *Dev. Ch. Rep.*, 314, *Stanly vs. Stocks*, and *note* to page 317. 1 *Hill Ch. Rep.*, 500, *Stoney vs. Shultz.* 3 *Leigh*, 532, *Conrad vs. Harrison.* 10 *Do.*, 394, *McClung vs. Beirne.* 10 *Sergt. & Rawle*, 450, *Nailer vs. Stanley.* 2 *Watts*, 205, *Zeigler vs. Long.* 1 *Freem. Ch. Rep.*, 419, *Pallen vs. The Agricultural Bank.* 8 *Sm. & Mar.*, 357, *The Agricultural Bank vs. Pallen.* 6 *Ohio*, 227, *Piatt vs. St. Clair's Heirs, et al.* 11 *Do.*, 444, *Commercial Bank vs. Western Reserve Bank.* 14 *Do.*, 365, *Cary vs. Folsom.* 24 *Maine*, 427, *Holden vs. Pike.* 25 *Do.*, 383, *Cushing vs. Ayer.* 1 *Penn. State Rep.*, 267, *Cowden's Estate.* The same principle sustained by

these authorities, and which, as shown by them, is the law in the several States of the Union, is also recognised by this court, in the case of *Watson vs. Bane*, 7 *Md. Rep.*, 117. The only authority which seems to be in conflict with them and to support the opposite doctrine, is that of *Doub vs. Barnes*, 4 *Gill*, 1, but it is submitted that the circumstances of that case are not *similar* to the present, and it is not *analogous*, and should not control the decision here.

2nd. This case as between Reigle and the prior judgment creditors involves the common principle of equity, that if a creditor has a lien on two different parcels of land, and another creditor has a lien of younger date on one of those parcels only, he will be entitled to have the prior creditor turned over upon the other fund to prevent a disappointment of the junior lien. Here Reigle being a subsequent mortgagee, and holding a specific lien only on the property mortgaged to him, he is entitled to have the prior judgment creditors, whose judgments are general liens upon all the debtor's real estate, turned over and be made to resort to that part of such real estate not included in or affected by his mortgage, to the extent or amount of his mortgage claim. 8 *Ves.*, 382, *Aldrich vs. Cooper*. 17 *Do.*, 514, *Ex-parte Kendall*. 1 *Johns. Ch. Rep.*, 409, *Cheesbrough vs. Millard*. 9 *Gill*, 185, *Woollen & Kurtz, vs. Hillen*.

3rd. Subrogation is not the proper or efficient remedy for Reigle in this case, for though the prior judgment creditors should receive the entire fund arising from the sale of the property mortgaged to Reigle, yet, because these judgments have been permitted to die and not revived by *sci. fas.*, and to all of them prior to the mortgage, limitations would be a bar, and because the levies thereunder have become wholly inoperative and void as against subsequent lien-holders, no assignment or cession that the creditors could make of their judgments would likely be effectual in securing to Reigle the payment of his mortgage debt. And it would be particularly unjust and inequitable, that parties who, by the use of ordinary diligence and expedition, could, many years since and before the death of Joseph Hollman, have made their judgments out of other

lands than those mortgaged to Reigle, and upon which other lands levies had been actually made, should now be permitted to appropriate the only fund out of which Reigle can be paid to the payment of their judgments, irrespective of their proceedings thereon, and leave to Reigle the precarious chances and circuitous delays in pursuing their neglected and statute-barred judgments, as a forlorn means of realising his claim. The consequences of the *laches and neglect* of the prior creditors, in not executing their judgments and levies, should be visited upon them and not upon Reigle; and the fund arising from the sale of the estate mortgaged should be exonerated from the judgments of these prior creditors to the extent of Reigle's claim, who should be paid out of the fund originally designed for him. 1 *Johns. Ch. Rep.*, 409, *Cheesbrough vs. Millard.*

4th. If it be determined that the prior judgment creditors are to be paid at all events, notwithstanding their *laches and neglect*, and it should be thought that it is not sufficiently certain or evident to this court, that the other property than that mortgaged to Reigle will be sufficient to pay the balance due on the judgments prior in date to Reigle's mortgage, then this court will have to settle the principles in the case and remand it, under the act of 1832, ch. 302, to enable Reigle to prove the sufficiency of the remaining parts of the estate to pay such balance, which can be easily done.

*J. Dixon Roman* for the appellees, argued:

1st. That the judgments of the creditors are general liens and prior to either of the mortgages upon the property, and ought not to be delayed by controversies concerning contribution between the subsequent mortgagees. Whatever may be the law in other States this is unquestionably the law of Maryland. The decision in *Doub vs. Barnes*, 4 *Gill*, 1, is directly in point and must be conclusive of this case. See also 10 *G. & J.*, 65, *Gibson vs. McCormick.* 7 *G. & J.*, 121, *Schnebly vs. Ragan.*

2nd. There is no evidence in the record of the value of the farm mortgaged to Hollman, or of its sufficiency to satisfy the

judgments, and for aught the record discloses the postpone-
ment, as prayed, may result in the loss of the claims of the
judgment creditors.   The mortgagee is liable to the charge of
*laches* equally with the judgment creditors.   But no harm is
done or will result to any one from this delay, for neither the
judgments nor the mortgage were barred by limitations at the
date of the decree; and besides the claims are *admitted* by all
parties, and no such defence can now be set up.

TUCK, J., delivered the opinion of this court.

We are of opinion that the order from which this appeal was
taken should be affirmed, for the reasons and upon the author-
ities stated in the opinion of the court.   According to the Mary-
land cases, there cannot be a reasonable doubt of the correct-
ness of the decision.   That of *Doub vs. Barnes,* 4 *Gill,* 1, is
clearly in point.   The cases are not precisely the same in the
form in which the question is presented, but they are substan-
tially alike, and the same principle must govern each.

The judgment creditors were brought into court, at the in-
stance of other creditors of Hollman, in order that the sale of
his property might not be prejudiced "by the doubts and un-
certainties hanging over the title, by virtue of the judgments,
*fi. fas.* and levies;" the bill also stating, that loss might be
obviated by making all the incumbrancers parties, and having
a sale made under the direction of a court of equity, at the
same time guarding the rights of the mortgagees and judgment
creditors, "by allowing them all the priorities they had re-
ceived and were entitled to out of the proceeds of sale."   To
this mode of making the sale the judgment creditors assented,
reserving their liens.   The object then was, not to contest and
ascertain whether the judgments were liens as against all or
any of the parties, but to promote the advantage of all, by
making a clear title to the purchasers.   The change of the forum
for the purpose of making the sale, cannot affect the rights of
the parties *inter sese.*   It certainly could not as against the
judgment creditors as defendants, *in invitum,* nor upon the
ground of their assent to the proceedings, because the assent
expressly reserves their liens as acquired at law.   Their rights

cannot be suspended until questions of contribution or of subrogation can be adjusted; nor can they be driven to resort to other lands, yet unsold, for the benefit of junior mortgagees. 4 *Gill*, 22.

The objection that they have slept upon their rights to the prejudice of other creditors, does not apply to the judgment creditors any more than to the appellant. He was also an actor in this proceeding, and might at any time, as he may now, require the trustee to proceed to complete the trust. The judgment incumbrancers, reposing upon their liens on all the property, were not bound to have taken further steps, if the sales already made were sufficient to satisfy their claims. It was more properly the duty, as it was the interest, of the subsequent mortgagees, to have caused additional sales to be made for the payment of their demands.

We may remark, in answer to a suggestion in argument, that we do not perceive any obstacle, by lapse of time, in the way of these mortgagees, as the judgment creditors to whose rights they would be subrogated were not barred at the time of filing the bill, and such a defence could not now be interposed against the equities of those who may take their places, upon principles of substitution.

The case of *Watson vs. Bane & Winters*, 7 *Md. Rep.*, 117, is different from the present, and stands unaffected by the doctrines here announced.

> *Order affirmed, with costs, to be paid out of the fund.*