PRATT and WALLIS, for the General Insurance Company.

<table>
<tr><td>JAMES KENT,<br>vs.<br>JOHN R. RICARDS ET AL.</td><td>}</td><td>DECEMBER TERM, 1850.</td></tr>
</table>

[ATTORNEYS, POWERS OF.]

AN attorney, who has a claim for collection, cannot, without the authority of his client, take a bond or anything else but money, in satisfaction of the debt.

But the power of the attorney over the conduct of the cause, is coextensive with that of his client; he may agree not to demand a judgment, or stipulate for a *cessat executio*, and any violation of this agreement will give the opposite party title to relief, as if the agreement was made with the express authority of the client.

When an appearance of an attorney is entered on the record, it is always considered that it is by the authority of the party, and whatever is done in the progress of the cause by such attorney, is considered as done by the party, and binding upon him.

The plaintiff's attorney agreed with defendant, *first*, that the suit should not be further prosecuted until there was an ascertained deficiency in certain assignments which he received from the latter, to pay the claim against him. *Secondly*, when judgment was entered, he agreed with defendant's attorney that it should be stricken out, if objected to by defendant. And *thirdly*, when so objected to, he assured defendant the judgment should make no difference in the collection of the debts assigned, and that no execution should be issued upon it until such debts could be collected. HELD—

That it was clearly within the scope of the authority of the attorney to make this agreement, and equity will interfere by injunction, to prevent the premature enforcement of the judgment.

Equity will relieve against a judgment at law, when its justice can be impeached by facts, or on grounds of which the party could not have availed himself at law, or was prevented from doing it by fraud, or accident, or the act of the opposite party, unmixed with any negligence or fraud on his own part.

An answer which does not deny the averments in which the equity of the bill consists, but states "that respondent does not believe, and cannot admit that the said attorney made any such arrangement or contract as set forth in the bill," is not sufficient to dissolve an injunction.

———

[The following opinion of the Chancellor in this case, was delivered upon the hearing of the motion to dissolve the injunction which had been granted upon the bill of the complainant, restraining further proceedings upon a judgment which the defendants had recovered against him in Anne Arundel County Court. The grounds upon which the injunction was asked for, was an agreement made by Philip Culbreth, the attorney of the plaintiffs in the judgment (who has since left the state), with the complainant in reference thereto. The allegations of the bill in this particular, as well as the statements of the answer, are sufficiently stated in the Chancellor's opinion.]

———

THE CHANCELLOR:

I have given the facts and circumstances of this case, and to the very elaborate and carefully prepared written arguments of the solicitors of the parties, the fullest consideration, and am of opinion that the entire equity upon which the injunction rests has not been removed by the answer.

It is not pretended that an attorney who has a claim for col-

lection, can, without the authority of his client, take a bond, or anything else but money, in satisfaction of the debt; and if the complainant in this case was under the necessity of maintaining such a position, he would be without any well-founded title to the aid of the Court.   His case, however, is not placed upon that footing, but upon the ground that the judgment was obtained, or is about to be enforced, in violation of an agreement with the attorney of the plaintiffs at law, which, under the circumstances, he had reason to believe the former was authorized to make, and in regard to which, as I think, his authority cannot be disputed.   The receipt of the attorney for the assigned claims shows that the proceeds, as collected, were to be applied in payment of the claims of the defendants against the complainant; and the correspondence between the defendants and their attorney clearly shows that they were aware of those assignments, and gave instructions in regard to their collection.

The bill, after setting forth the facts of the assignments and the institution of the suit against the complainant and his partner, charges, "that it was the distinct understanding and agreement between him and the said attorney that the suit at law should not be further prosecuted until there should be found to be a deficiency to pay off the amount thereof in the sums assigned."   "That the complainant refused to give judgment in the suit against him, and left town, believing no such judgment would be entered."   "That afterwards, and at the said term, the attorney of the plaintiffs at law agreed with the attorney of the complainant that he would take a judgment, with the distinct understanding, that if the plaintiff objected thereto it should be stricken off, and that upon this understanding the judgment was given."   "That as soon as the complainant knew that the judgment had been rendered, he saw the plaintiffs' attorney in relation thereto, and objected to it, and required that the same should be stricken out, when the attorney stated that the judgment should make no difference in his course in the collection of the debts assigned; that his clients were perfectly satisfied with the assignments, and would wait

until they were collected, or could be collected, and assured the complainant that no issue should be made of execution on the said judgment until he could have time to collect the debts so assigned and transferred to the plaintiffs at law." "That relying on these assurances of the attorney, he, the complainant, did not require the said judgment to be stricken out, as he had a right to do."

Now these averments, which constitute the substantial equity of the bill, have not been, and probably in the very nature of things they could not be, positively denied by the answer, and the effect of the argument, therefore, has been to show that the attorney, in making such an arrangement, (if he did make it,) transcended his authority, and that his clients are not bound by it.

But it will be at once perceived that this is a very different question from that touching the power of an attorney to receive a bond, or anything else but money, in payment of a debt due his client, without his assent. The question here has reference to the power of an attorney over the conduct of the cause, and it is believed to be indisputable that his authority in this respect is co-extensive with that of his client. No one will deny that an attorney may agree not to demand a judgment, or may stipulate for a *cessat executio* upon a judgment, when rendered, and that any violation of his agreement, in either of these particulars, will give the opposite party the same title to relief as if the agreement was made with the express authority of his client.

It was decided by the Court of Appeals, in the case of *Henck* vs. *Todhunter*, 7 *H. & J.*, 275, "that by the law and the practice of the Courts of this State, a party might appear either *in propria persona* or by attorney; and whenever the appearance of an attorney is entered on the record, it is always considered that it is by the authority of the party, and whatever is done in the progress of the cause by such attorney, is considered as done by the party, and binding upon him;" "and whether the attorney is faithful to his trust or not is a

matter between him and the party, his client, to whom he is responsible for the faithful discharge of his duty."

Now the agreement charged in this case has direct reference to the conduct of the cause, and comes clearly within the scope of the authority of the attorney, thus distinctly announced by the Court of Appeals. The agreement between the complainant and the attorney of the plaintiffs at law was, *first*, that the suit at law should not be further prosecuted until there was an ascertained deficiency of the assignments to pay the claim. *Secondly*, that when the judgment was entered, the attorney of the plaintiff agreed with the complainant's attorney that if he, the complainant, objected to the judgment, it should be stricken out ; and *thirdly*, that when the complainant did object, his objection was obviated by the assurance of the plaintiff's attorney that the judgment should make no difference in his course in the collection of the debts assigned, and assured the complainant that no execution should be issued upon the judgment until the assignments could be collected, and that time should be allowed for that purpose. It seems to me that, assuming the existence of this state of facts, there can be no doubt of the power of this Court to interpose to prevent the premature enforcement of the judgment. If the facts are true, as charged in the bill, the attorney of the plaintiff at law not only took a judgment contrary to his express agreement with the complainant at law, but prevented the latter from applying in due time to the County Court to have it stricken out, by assuring him it should not have the effect of varying their said agreement in any manner whatever. It is believed to be quite clear that if an application had been made to the County Court to strike out this judgment within the time allowed by law and the practice for such motions, and the Court had been satisfied of the truth of the statements contained in this bill, that the application could not have been denied. But the complainant was prevented from making such motion, by an assurance that the judgment should not be used to his prejudice, and that the agreement in reference to the claims assigned should be fully and fairly carried into execution, and hence his right to the aid

of this Court, where alone he can now have redress. This case seems to me to fall directly within the principle so often decided by the Courts, that a Court of Equity will relieve a party against a judgment at law, when its justice can be impeached by facts, or on grounds of which the party seeking the aid of Chancery could not have availed himself at law, or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with any negligence or fraud on his own part. *Gott & Wilson* vs. *Carr*, 6 *G. & J.*, 309. Certainly in this case, if the averments of the bill are true, the complainant was prevented from making his defence at law by the act of the attorney of the opposite party, and no such negligence can be imputed to him as will deprive him of the title to come here for relief.

The answer to this bill does not profess to deny the averments in which the equity consists. After admitting that the attorney of the respondent did receive from the complainant sundry causes of action for collection, the answer proceeds to say, "but this respondent does not believe, and cannot admit, that the said attorney made any such arrangement or contract in relation thereto as is set forth in the said bill." That such an answer is not sufficient to dissolve an injunction is conclusively shown by the case of *Doub* vs. *Barnes et al.*, 4 *Gill*, 1.

I am therefore of opinion, the injunction must be continued, and shall so order. But in coming to this conclusion, I do not mean to be understood as intimating any opinion with regard to the question so much controverted, whether the assignments were to be collected at the risk of the complainant or the defendant. I leave that question for further consideration, when the cause comes up to be heard upon the merits.

A. RANDALL, for Complainant.
A. B. HAGNER, for Defendant.