NATHANIEL S. TUCKER *et al.*

*v.*

SAMUEL C. CONWELL *et al.*

1. PAYMENT—*by taking other notes and security.* Where a party, who had taken notes secured by mortgage on land sold, takes other notes from a subsequent purchaser, secured by mortgage on the same land for the same amounts, and falling due at the same time, this will be regarded as

a payment of the prior notes and a discharge of the mortgage given to secure them.

2. Chancery—*removing cloud on title.* Where a party obtains judgment by *scire facias* on the foreclosure of a mortgage given to secure notes which have been paid by taking new notes and mortgage, and purchases the mortgaged premises, a portion of which he had previously released from the lien of his mortgage, a court of chancery will enjoin the execution of a deed to him, and set aside the judgment as a cloud upon the title of a subsequent purchaser of the premises.

3. Scire facias—*to foreclose—a proceeding at law.* *Scire facias,* to foreclose a mortgage, is purely a proceeding at law, as much so as debt or assumpsit, and it appertains in no respect to equitable jurisdiction.

4. Same—*master in chancery can not execute judgment.* The judgment in *scire facias* to foreclose a mortgage, is directed to the sheriff and not to the master in chancery. The court, in such a proceeding, has no power to appoint the master in chancery to sell the mortgaged premises, but must follow the statute; and, therefore, a sale by the master in chancery is void, and confers no rights upon the purchaser.

5. Estoppel—*by declarations acted on.* Where a party declares that notes given to him, which had been secured by mortgage on real estate, were paid, and the land clear from incumbrance, to purchasers at the time of their buying the land, he will be estopped from afterwards claiming that his mortgage was not satisfied, as against such purchasers, who have acted on the faith of such assurance and paid large sums of money for the land.

Appeal from the Circuit Court of Mason county; the Hon. Charles Turner, Judge, presiding.

This was a bill in chancery, by Nathaniel S. Tucker and Henry Mansfield, against Samuel C. Conwell, James F. Kelsey and James M. Ruggles. The facts, and object of the bill, are stated in the opinion.

Messrs. Lacey & Wallace, for the appellants.

Messrs. Dearborn & Campbell, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

Appellants filed a bill in chancery, in the Mason circuit court, against appellees, to enjoin the master from making

a deed to Conwell, and to remove a cloud upon their title to N. E. qr. sec. 32, T. 21, R. 8 W., 3d P. M.

It appears that Conwell purchased of one Reeder the land in controversy, and afterwards sold it to Alexander Croskery, who, to secure the purchase money, executed notes and a mortgage on the land. Croskery sold the land to one Berry, who gave to him his notes and a mortgage, and he transferred them to Conwell; that, afterwards, Conwell released the west half of the quarter from the mortgage, and in May, 1857, Berry sold that half to one Shubert, who, in February, 1859, sold it to one Morris, and he mortgaged it to Conwell and one George N. Walker, to secure the payment of his promissory notes which, it is claimed, were accepted in satisfaction of Berry's notes; that, in August, 1857, Berry sold the east half of the quarter of the land to one Adkins, who gave Berry a mortgage on the land to secure the purchase money. In August, 1858, Adkins sold to Morris, who mortgaged the whole quarter to Parker Russell & Co.; that Morris subsequently conveyed to Beaman, and others composing that firm, the east half, and they afterwards foreclosed their mortgage against Morris and others, and the entire quarter was sold by the master in chancery, and Parker Russell & Co. became the purchasers, and the land not having been redeemed, they obtained a deed; that they afterwards sold the land to appellants; that they entered into possession, and had so remained until they filed their bill.

It also appears that Walker and Hancock, to whom the Berry notes were assigned, filed a bill, and at the October term, 1860, obtained a decree against Berry and Morris, and sold the land, and Conwell became the purchaser, and afterwards obtained a master's deed.

It is charged that these notes had been paid, and that Conwell knew the fact when he purchased; that, in August, 1867, the lands were sold by the master in chancery under a judgment in *scire facias* against Alexander Croskery, on the

note last falling due on his purchase, and Conwell became the purchaser at that sale.

It is charged that the proceeding by *scire facias* was void, and that Conwell or Kelsey, who claimed an interest in the land, are about to receive a deed therefor from the master in chancery, under the sale in the proceeding in *scire facias.* It is claimed that the Croskery notes were all paid as well as the Berry notes, before that proceeding was instituted. The court below, on a hearing on the bill, answers, replications and proofs, dissolved the injunction, dismissed the bill, and assessed $300 damages for wrongfully suing out the injunction, whereupon complainants bring the case to this court by appeal, and ask a reversal.

We have examined the evidence in the case with care, and are constrained to believe that it proves that all of the Croskery notes were paid before the *scire facias* was sued out. Conwell, in his testimony, gives it as his opinion that it has never been paid, but very fairly says that he depends more on the records than on his memory for the facts. On the other hand, several witnesses swear positively to either payment, or facts that clearly show payment was made.

Berry swears that, when he purchased the land from Croskery, he gave his notes, and a mortgage on the land to secure them, to Conwell, in lieu of Croskery's notes, and paid $300 in addition in notes on Adkins and Blakely, and the balance of the price of the land in money; that the Croskery notes were, at the time, all given up but one, and Conwell said that was mislaid, but would be surrendered as soon as it should be found.

A significant fact in support of his testimony is, that the Berry notes were given for the amount of Croskery's notes and interest, or within one dollar of the amount, and were made payable at the same times they severally fell due. It is true, that Berry says in his testimony that he gave his notes to Conwell, when he, in fact, gave them to Croskery, who transferred them to Conwell. When we remember that

the transaction occurred many years since, and Berry was more interested in purchasing the land and in taking up Croskery's notes than in the precise form the transaction should assume, it is not surprising he should make such a mistake. It does not detract materially from the value of his evidence.

Again, Conwell corroborates Berry when he says all of the notes were given up but one. He, however, says he does not remember that he said it had been mislaid when he received the Berry notes from Croskery, at the time he sold to the former.

Again, Shubert swears that, at the time he purchased of Berry, Conwell stated to him the land was clear from incumbrance except the amount of Berry's notes and mortgage, and Morris and Berry swear to the same thing. And when Shubert purchased, Conwell released the west half of the quarter from all prior incumbrances, and received Shubert's notes for one-half of the amount of Berry's notes. At the several sales of this land, he was present and consulted as to title; drew the papers, or at least took the acknowledgment of the deeds, and received the securities. Why take new mortgages at each sale if it was not understood those formerly given were then released? If Conwell relied on the Croskery notes and mortgage, we can see no reason for new notes and mortgages. They in nowise increased the security. If the land was worth the debt, its collection could be enforced upon that security as effectually as by taking new mortgages. The Croskery mortgage was a lien on the land prior to all others, and could not be bettered by taking others on the same property.

Berry states that he paid his own notes by substituting Shubert's notes. If that is true, then, even if Berry's notes were held as collateral security for Croskery's notes, they were paid when Berry paid his own. It seems that, at each new transfer of the property, new notes were taken, of amounts equal to those previously given, and maturing at the same time, and transferred with a mortgage to Conwell, and some

of them were paid in money, and some were satisfied by fore-closure and sale of the property. We are clearly of opinion that this note of Croskery, upon which the judgment in *scire facias* was rendered, was fully discharged and satisfied before the suit was brought.

But, if it could be conceded that Croskery and Berry's notes were not paid, the declarations made by Conwell at different times that the land was clear from incumbrance when pur-chases were made, should estop him from claiming that their mortgages are not satisfied, as against such purchasers and their assigns. He thus permitted, if he did not directly in-duce, such purchasers to pay large sums of money for the land, and he should not be permitted to defeat the title thus acquired by liens existing prior to the making of such declar-ations. Having thus misled them, he should not be per-mitted to now assert his claim against those asserting the rights then acquired.

*Scire facias* is purely a proceeding at common law, as fully as is debt or assumpsit, and it appertains in no respect to equitable jurisdiction. A recovery in such a case is by judg-ment and not by decree; and such a recovery is enforced by execution on the judgment, directed to the sheriff of the county and not to the master in chancery, who is, in no sense, or for any purpose, a ministerial officer of the court of law. The statute has authorized the sheriff alone—or, in certain cases, the coroner or an elisor—to execute the process of the common law courts. The judge of such a court has no power to appoint the master or other person to execute its judg-ments. The statute must be followed. It, then, follows that the sale by the master was wholly without power, and is void, and Conwell acquired no rights whatever by the purchase.

The writ of *scire facias* and judgment are against the entire quarter section, whilst Conwell had released the west half from this mortgage, and he was aware of the fact, and swears he released it. The proceeding makes no reference to the re-lease, and the judgment is for the sale of the whole quarter.

It would operate harshly, if not fraudulently, to permit this judgment to stand and the sale to be operative, and thus cut off the claims of all subsequent purchasers not parties to the suit. It would be to deprive them of title to the west half, at least, when there is not the semblance of a claim to it. To sanction such a proceeding, would be to sustain the most palpable injustice and wrong. Courts are not created and maintained for such purposes, but to administer justice, unless prevented by stern and unyielding rules of positive law. Even if the note was not paid, he had no pretense of a claim to enforce its collection against the west half, as he had released it, and it would be a fraud to permit it to be sold to pay the note, under a foreclosure.

Conwell knew that he had released one-half of the land. There can be no pretense, in the face of that deliberate act of his, that he can have any legal or equitable claim on that half. To enforce the judgment would be to force persons to pay money they do not owe, or lose their lands, against which no just claim can be asserted. The judgment in the *scire facias* is a cloud on the title of complainants, at least to the extent of the west half of the quarter, and may be as to the other for anything we can certainly determine from the record.

The evidence is not full enough to enable us to determine whether the purchase of Conwell, under the Walker and Hancock foreclosure, vested the title in Conwell. It is not certain that these notes and mortgage were connected with the transactions involved in this suit, and whether all necessary parties were before the court. But the court should have set aside the judgment and sale and enjoined the execution of a deed thereunder by the master.

The decree of the court below is reversed, and the cause remanded.

*Decree reversed.*