COLE BROTHERS & HART, PLAINTIFFS IN ERROR, v. LORENZO B. WILLIAMS, DEFENDANT IN ERROR.

Contract: FRAUD. L. B. W., having contracted verbally with H., the agent of C. B. & H., to furnish and put up certain lightning rods at a cost not to exceed $100, H. afterwards presented to him a paper for his signature, which he said was an order to the house to put up the work. L. B. W., not being able to read well without spectacles and having none at hand, requested H. to read the paper (several clerks of W. being in the same store with W. and H. at the time). H. read, or pretended to read, the paper, but did not read anything about the price to be paid for the rods, whereupon L. B. W. put his signature to it. It turned out that the paper contained a stipulation on the part of L. B. W. to pay for the rods at the rate of 37½ cents per foot, and that at that rate the rods furnished amounted to $404.25. In a suit between the parties, *held* L. B. W. was not guilty of such negligence or want of diligence as would enable C. B. & H. to recover on the written instrument.

ERROR to the district court for Douglas county. Tried below before SAVAGE, J.

*Keatley & Durham,* (*W. J. Lamb* with them), for plaintiffs in error.

*J. C. Cowin,* for defendant in error.

COBB, J.

The defendant in error sued the plaintiffs in error in the court below for a bill of goods amounting to $330.48, giving them credit "by lightning rods $100.00," and

claiming a balance of $230.48, with interest. The plaintiffs in error made answer admitting the sale and delivery of the goods, but setting up as a defense to said action the following special matter: "That some time on or about the 15th day of March, 1878, the plaintiffs herein, and this defendant, entered into a certain written contract or agreement, by the terms of which the defendants agreed to erect upon the building of the plaintiff, lightning rods, points, and ornaments stated in said agreement, and that the said defendant should make a discount from such prices, in the sum of one hundred dollars upon the whole work agreed to be done as aforesaid. Defendants further agreed therein, that in consideration of the furnishing and erecting the rods aforesaid, they would take goods out of plaintiff's store in the city of Omaha, to the amount of three hundred dollars to apply on the price agreed upon between the plaintiff and defendants for the furnishing and erecting said lightning rods, points, and ornaments aforesaid. If in the event of the said lightning rods, points, and ornaments so furnished and erected, as aforesaid, should not amount to the said sum of three hundred dollars at the price stated in said agreement, that defendants would pay plaintiff any balance so remaining due and unpaid upon settlement," etc. Said answer refers to the said contract as exhibit "A," and alleges the furnishing and erecting of the lightning rods, points, and ornaments therein specified for the plaintiff, and that the same amounted, at the price therein agreed upon, to the sum of $404.25, etc. Said exhibit "A" is set out as follows:

Exhibit "A." Order for erection of rods. Mr. E. House, agent of Cole Brothers & Hart: Sir: Erect at your earliest convenience your Franklin lightning rods on my store building, points and ground rods, in accordance with the scientific rules as printed on the back of this order, and I agree to settle for the same upon the

completion of the work, by cash or note due, at 37½ cents per foot for the rod, including the length of braces, and $3.50 each for platinum tipped points, vanes $3.50, balls $3.00, no extra charge for work. I want you to put on two four point compasses and all other ornaments you can to make the best of a job. We are to give Mr. Williams a discount off of his job of eighty-five dollars when settled for. Make your discount $15.00 more, and we are to give Mr. Williams one dollar for each point he assists us in selling, and we are to give Mr. Williams three hundred dollars trade, and apply rods on trade, the balance to be cash on delivery of goods or on settlement. I want you to do the best job you ever done.

L. B. WILLIAMS.

The defendant in error, in and by his reply, denied that he was indebted to the said defendants in any sum whatever, admits that defendants have a just claim in the sum of one hundred dollars against him, which appears as a credit on the statement of plaintiff's account filed with his bill herein, and which said sum he alleges to be the consideration for the sale of certain lightning rods and fittings mentioned in the answer of defendants, and existing by virtue of a certain verbal contract between the plaintiff and defendant's agent, House, prior to the pretended written contract set up by the answer of the defendants. That as to the written contract pretended to be set forth in the said answer he denies that it is correctly set forth. "And plaintiff says that he never signed an agreement as set forth in said answer, and further says that he did sign a certain pretended written agreement between the parties concerning the said rods; but says that he was induced to sign the same through the false, wilful, and fraudulent representations and concealments of defendants' agent, House, made with intent to defraud plaintiff, and on which plaintiff relied, to-wit: After the said verbal contract had been made, in which

said agent agreed to put up good, abundant, and substantial Franklin rods on plaintiff's store at a cost of one hundred dollars, all ornaments, vanes, and compasses to be furnished plaintiff free and put on said buildings as a matter of advertisement for defendants' business, which said agent declared he wanted to advertise in this way, because plaintiff's building was new and prominent, and defendants had just come here to introduce their business, said agent then presented to plaintiff, in plaintiff's store, the said pretended contract, and asked plaintiff to sign the same. Plaintiff alleges that he is unable to see well, and after looking at the paper so offered could not well read it, and asked said agent what it was, and also asked him to read it for plaintiff, whereupon said agent said that the paper was simply a direction to the house as to the manner of putting up the rods, and proceeded to read the same, omitting in said reading all mention of prices. And plaintiff declares that he did not read it himself, but relying wholly on the statements and reading of said agent, and being deceived by the same, he signed the said paper; and that he would not have signed the same had said prices been read; and that he so signed upon the full faith and understanding that the consideration was as agreed upon by the said verbal contract," etc.

The verdict was for the plaintiff for the amount claimed.

The instructions excepted to by the defendants are as follows:

6. On the other hand, if you find from the testimony in the case that the plaintiff, being prevented by the temporary loss of his spectacles from reading said paper, applied to the agent of the defendants to read it for him, and thereupon said agent pretended to read the same, but did not read the same correctly, leaving out the prices therein contained, and concealed from the plaintiff the fact that a contract as to price was incorporated in said paper, and the contract as made was for said lightning rods

for $100, then the plaintiff is entitled to recover the full amount of his bill, less only the said sum of $100.

This instruction should be read in connection with the one which immediately preceded it, which is as follows:

5. If the plaintiff signed such paper knowing its contents or having the means at hand of making himself acquainted therewith, which he declined or neglected to use, then he is bound by its stipulations, and can only recover the amount of his bill for goods less the amount due under the written contract for lightning rods.

These two instructions taken together very fairly express the law applicable to the enquiry before the jury. The enquiry was, what contract did the plaintiff and defendants, through their agent, House, make in regard to the lightning rods? It is admitted that the plaintiff signed his name at the foot of the paper, which contained a statement of the price of the rods at $37\frac{1}{2}$ cents per foot, etc. If he did this knowingly, or carelessly and negligently, and free from any act of bad faith or deception on the part of the defendants or their agent, he would be bound by it.

In one point of view the signing of a written instrument without reading it, because of the temporary loss of one's spectacles, where the use of another pair could have been procured without much effort, or in such case relying upon an interested party on the other side to read it, when one's own friends or employees were near at hand, would be regarded as negligence, and the want of due diligence, in case it turned out that the paper signed was of a different character and import from that purporting to have been read and intended to be signed. But in this case the defendants are in no position to suggest the carelessness or want of diligence on the part of the plaintiff in relying on the good faith and truthful reading of their agent, even had his eye-sight been perfect or his spectacles at hand.

In the case of *Dinsmore v. Stimbert, ante* p. 433, we have had occasion to review the authorities to some extent, and in order to do so have made a thorough examination of them. And while such examination led to the conclusion that to enable a party to resist the payment of a negotiable note in the hands of a *bona fide* purchaser for value before maturity in the ordinary course of business without notice, on the ground that such note was procured by fraud and circumvention on the part of the payees, the promisor being led by such fraud and circumvention to believe that he was signing an entirely different kind and character of instrument, he must show that he is not chargeable with any laches or negligence or misplaced confidence in others. But all the cases which lead to this conclusion lay much stress on the fact that the present holder of the note is absolutely innocent of any participation in fraud himself, and of knowledge of it in others.

The point is also made by plaintiffs in error that the verdict is not sustained by sufficient evidence. There is certainly a conflict of testimony. It was a matter of impossibility for the jury to believe all the testimony. It is not for this court to say which was the most probable statement, that of the plaintiff, or that of the witnesses for the defendants. It was peculiarly the duty of the jury to sift and compare these conflicting statements and arrive at the truth as best they could. And we cannot say that they are not fully sustained by the evidence in the conclusion which they reached.

The other point stated in the petition in error not being insisted on by plaintiffs in error in their brief, nor alluded to at the hearing, will be regarded as abandoned by them. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.