HULDAH E. BURKE, Admx.

*v.*

BETSEY P. GRANT.

*Filed at Ottawa January 25, 1886.*

MORTGAGE—*estoppel to enforce it, by reason of acts induced by a promise to discharge the mortgage.* A was the owner of a city lot upon which his brother, B, had a mortgage for $1000, and C was the owner of a farm mortgaged for $3000. A exchanged his lot and a stock of groceries with C for her farm, each assuming payment of the other's mortgage. A and B came to see the farm, when B discharged the $3000 mortgage, and took a mortgage from A for $4000 on the farm. C having taken steps to sell her stock and personal property on the farm, was induced to sell and deliver the same to A, upon the promise of B that he would release his mortgage on the lot: *Held*, that as B induced the sale of the stock to his brother by C, under the belief that the incumbrance on the lot would be released, he was estopped from enforcing payment of his mortgage, and that it was properly declared paid, and set aside as a cloud on the title of C.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook County; the Hon. M. F. TULEY, Judge, presiding.

Mr. H. G. REEVES, and Mr. WM. E. HUGHES, for the plaintiff in error:

The court erred in granting a decree upon the evidence submitted. The main question is, whether Samuel W. Burke ever agreed to release his mortgage, or did anything pertaining to the sale of the personal property to estop him from foreclosing it.

Parol evidence should be carefully weighed before it is allowed to overcome the legal title to real estate shown by the records.

The court erred in not requiring the complainant to refund the money paid by Samuel W. Burke to redeem the property from sale for taxes.

That the decree is against the law, we cite *Prible* v. *Conger,*
66 Ill. 370; *Halks* v. *Livingston,* 34 Mich. 384; *Parker* v.
*Barker,* 2 Metc. 423; *Stone* v. *Lannon,* 6 Wis. 497; *Jones* v.
*Cowles,* 26 Ala. 612; *Mirauville* v. *Silverthorn,* 48 Pa. St. 147;
*Keating* v. *Orne,* 77 id. 89; *Brant* v. *Coal and Iron Co.* 3 Otto,
326; *Insurance Co.* v. *Mowry,* 6 id. 544; *Boggs* v. *Mining Co.*
14 Cal. 366; *White* v. *Ashton,* 51 N. Y. 280; *Davis* v. *Bow-
man,* 55 Miss. 676; *Whitney* v. *Holmes,* 15 Mass. 152; *Hamlin*
v. *Hamlin,* 19 Me. 141; *Swick* v. *Sears,* 1 Hill, 18.

Mr. T. M. MANNING, and Mr. EDWARD H. BRACKETT, for the
defendant in error, after stating the pleadings and facts at
length, called the attention of the court to the charges in the
bill, as relating to the doctrine of estoppel, citing *Dickerson*
v. *Colgrove,* 10 Otto, 579; *Pickard* v. *Sears,* 6 Ad. & El. 469;
*International Bank* v. *Bowen,* 80 Ill. 541; *Hefner* v. *Vandolah,*
57 id. 520; *Flower* v. *Elwood,* 66 id. 438; *Chandler* v. *White,*
84 id. 435; *Kinnear* v. *Mackey,* 85 id. 96; *Ball* v. *Hooten,* id.
159; *Nicholls* v. *Pool,* 89 id. 491.

As to the question of estoppel to foreclose the mortgage, we
say, first, the Statute of Frauds is not pleaded or set up as
a defence; and second, that the evidence is entirely legiti-
mate and proper if the statute had been pleaded.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This was a bill filed in the circuit court of Cook county
by defendant in error, Betsey P. Grant, against Samuel W.
Burke and Simeon S. Burke, to have a mortgage declared
paid, and to remove the same as a cloud on title, and for an
injunction to restrain a sale under the power in the mortgage.

On October 14, 1874, Simeon S. Burke was the owner of
lot 57, of Hayes, Shelby & Magoffin's subdivision of block
46, canal trustees' subdivision of section 7, township 39,
north of range 14, east of the third principal meridian, in
the city of Chicago, subject to a mortgage for $1000, and

defendant in error was the owner of a farm near Rockford, subject to a mortgage for $3000. On that day, Simeon Burke exchanged his Chicago lot and a stock of groceries for the farm of defendant in error. He assumed the mortgage of $3000, with interest from January 1, 1875, and she assumed the mortgage of $1000, with interest from the same date. The latter incumbrance had been executed by Simeon Burke to his brother, Samuel Burke, who owned it at the time of the exchange, and was still the owner of it when he died, after the beginning of this suit. It bore date January 1, 1873, and was given to secure a note of the same date, for $1000, drawing interest at the rate of ten per cent per annum, due in three years after date, and payable to the order of the said Samuel. Although the exchange of titles was made on October 14, 1874, yet the parties did not finally surrender possession to each other until about December 2, 1874. On or about November 12, 1874, the Burke brothers visited the Rockford farm, then still in the occupancy of defendant in error, and her husband, John R. Grant. While in Rockford, Samuel advanced the money to take up the mortgage of $3000, and received a new mortgage on the farm from Simeon, for $4000. There was, at this time, upon the farm, a large amount of personal property, consisting of hogs, sheep, cattle, horses, hay, plows, and the usual farming stock and implements. According to an inventory then taken, it was estimated to be worth between $1200 and $1300. It had been the intention of defendant in error to sell it at public auction, and, with the proceeds, to pay the mortgage on the Chicago lot, and some steps towards having such a sale had already been actually taken. It is claimed by defendant in error, that during this visit Samuel Burke told Mrs. Grant and her husband that the stock on the farm was in good condition, and that if she would let his brother, Simeon, have it, it should go in payment of the mortgage for $1000, provided Mr. Grant and Simeon could agree on

the price. The proof is unquestioned that Mrs. Grant owned the personal property on the farm; that John R. Grant and Simeon Burke agreed upon $1000 as a fair price for it; that Mrs. Grant sold it on November 12, 1874, to Simeon Burke, and executed a bill of sale of it to him on December 2, 1874, and at the same time put him in possession of it; that she has never been paid a dollar for it, and that if it is not applied towards the discharge of the mortgage, she will have lost it entirely.

The only question in this case is, whether the mortgage for $1000 has been paid, or whether the acts and declarations of Samuel W. Burke, who owned it, have been so instrumental in altering the position of the defendant in error, as to make it inequitable for him or his administratrix to enforce that mortgage against defendant in error. The testimony is conflicting, but the weight of it is in favor of defendant in error. She and her husband both swear, in substance, that Samuel Burke agreed to release the mortgage upon the conditions above stated; that the conditions were complied with, and that they gave up the auction sale, and turned the property over to Simeon, in consequence of the statements made to them by Samuel. The latter denies that he agreed to release the mortgage in return for a transfer of the personalty to his brother. This evidence, however, was given after he had been stricken with paralysis, and his memory had become weakened. C. F. Wilder, an employe on the farm at the time the Burkes made their visit, says that Samuel Burke came out to where he was at work, and examined the stock and the farming utensils, and made inquiries as to their condition, and expressed the intention of buying them. All the circumstances of the case point to the conclusion that the object of ascertaining, with so much particularity, the amount and character of the personal property, was to determine whether such property would be a fair exchange for the mortgage on the Chicago lot. Simeon states that John R. Grant

offered to give him the property if he would take care of the Chicago mortgage, and that there, at that time, he informed his brother of Grant's offer. Samuel himself says that he examined the stock because Simeon was talking of trading, and wanted his judgment. It thus appears from the evidence of the plaintiffs in error, that Samuel knew, when at the farm, that the exchange of the property there for the mortgage on the Chicago lot was a subject of negotiation between his brother and John R. Grant.

In the deed from Simeon Burke to defendant in error, she assumed and agreed to pay the mortgage. She was, consequently, the debtor of Samuel, and liable directly to him for the $1000. Her assumption of the mortgage was known to him, and yet he never called upon her for a cent of interest for over four years after the sale to his brother, Simeon, in November, 1874. The principal of the mortgage became due on January 1, 1876, and yet it was not until some time after the beginning of the year 1879, that Mrs. Grant was asked to pay either principal or interest. Simeon Burke states that he agreed to pay the mortgage to his brother, and that, in consideration of such agreement, the farm property was delivered to him. It does not seem reasonable, however, that John R. Grant would part with valuable property of his wife, and take nothing for it except the unsecured agreement of a man who was heavily in debt, and forced to rely on loans from his brother to meet his obligations. Simeon Burke stands alone in his account of the transaction. Mr. and Mrs. Grant, and Mrs. Manning, all testify that Samuel Burke agreed to release the mortgage,—not that Simeon agreed to assume it. They are confirmed by the testimony of Mr. Marshall, one of the witnesses of plaintiffs in error. He states that when he drew the bill of sale and another instrument, which has since been lost, such other instrument was to be signed or guaranteed by Samuel Burke, and that Mrs. Grant was to be indemnified against a mortgage, or the re-

lease of a mortgage was to be procured. This coincides with the evidence of J. R. Grant, to the effect that a release was actually drawn and sent down to Bloomington. for Samuel to sign.

Mrs. Grant and her husband state that Samuel Burke explained to them how he was to be compensated for his release of the mortgage on the Chicago lot. As already stated, he had taken from his brother, Simeon, a mortgage on the farm for $4000, of which $1000 was to be used in buying stock, but by reason of the purchase of the personal property with the release of the Chicago mortgage, the farm was already stocked, and it would not be necessary to advance the $1000 for that purpose. In other words, Samuel was to receive $1000 of the $4000 secured on the farm, in exchange for the $1000 on the Chicago lot released to Mrs. Grant. Simeon Burke has since executed two chattel mortgages to his brother upon this identical property, one of $500, in May or June, 1875, and one of $900, in 1879. The fact that Samuel took these mortgages, shows that he must have regarded the property as belonging to Simeon; but he could not have so regarded it if Simeon's version of the matter is correct. If the property had been sold to Simeon Burke upon condition that the latter should pay the mortgage, no one knew better than Samuel that the condition had not been complied with, and with such knowledge, and in view of the active part he had taken in effecting the transfer of the personalty to his brother, he was not dealing justly towards the defendant in error in taking chattel mortgages upon her property, which had been only conditionally sold to Simeon, and which Simeon had not yet paid for.

The evidence shows that the conduct of Samuel W. Burke led defendant in error to abandon the proposed sale of her property at public auction, and to turn it over to Simeon Burke, in the belief and expectation that the incumbrance on the lot in Chicago would be released. The doctrine of *estoppel*

*in pais* is clearly applicable. Defendant in error has been induced by Samuel Burke to occupy a position she would not have occupied but for his acts and declarations. (*Hefner* v. *Vandolah*, 57 Ill. 520; *Dickerson* v. *Colgrove*, 10 Otto, 579; *Faxon* v. *Faxon*, 28 Mich. 159; *Tucker* v. *Conwell*, 67 Ill. 552.) It would therefore be inequitable to permit him to enforce this mortgage against her.

The decree of the Appellate Court is affirmed.

*Decree affirmed.*

This case was originally assigned to Mr. Justice DICKEY. No opinion having been written by him before his death, the record was re-assigned at the November term, 1885.