# BROWN et al. v. TRENT et al.

No. 2262.   Opinion Filed November 26, 1912.

(128 Pac. 895.)

1. GUARDIAN AND WARD—Sales Under Order of Court—"Collateral Attack"—"Direct Attack." Where a petition, in a suit to quiet title to certain land, alleges that an order of court directing a guardian to sell land was procured by fraud, and prays to have the order of sale and subsequent orders approving the sale canceled, the suit is a "direct attack" on the orders and not a "collateral attack."

2. JUDGMENT—Equitable Relief—Fraud. The fraud which will justify the cancellation, in an equitable suit, of a judgment or order of a probate court, must be extraneous to the issues, and such as prevented the complaining party from having a fair hearing.

3. QUIETING TITLE—Jurisdiction of Action. A district court of one county has jurisdiction, in a suit to quiet title to land in that county, to cancel and set aside an order of the United States Court in the Indian Territory made in what is since statehood another county, directing the sale of the land, and another approving the sale, where the orders affect the title to be quieted, if it appears that the orders were obtained by fraud.

4. DEEDS—Validity—Fraud. A petition, which alleges that grantees in a deed were the nephews of the grantor, that she had confidence in their integrity, that they procured her signature to a deed upon the representation that it was a release of a dower right for the purpose of selling the land for town-site purposes whereby a large sum could be realized, that she relied upon such representations, that they were untrue, and that no consideration was paid or promised her, states sufficient grounds to justify a cancellation of the deed as against the grantee and subsequent purchasers with notice.

5. GUARDIAN AND WARD — Sale of Minors' Land — Grounds — Fraud. A petition, which alleges that an order of the probate court directing the sale of minors' lands was procured without the knowledge of the guardian, that all of the proceedings in making the sale were without her knowledge, and that neither the guardian nor the minors had received anything from the sale,

states sufficient grounds to justify the cancellation of the order of sale and deed made thereunder as against the grantee procuring the sale and subsequent purchasers with notice.

·6.     **VENDOR AND PURCHASER**—Bona Fide Purchasers—Notice—Possession. A purchaser of land is charged with notice of the rights of persons in actual possession.

(Syllabus by Rosser, C.)

*Error From District Court, Washington County;*
*John J. Shea, Judge.*

Action by Nannie E. Brown and others against R. O. Trent and others to quiet title to land. From a judgment sustaining a demurrer to the petition, plaintiffs bring error. Reversed and remanded.

*Veasey & Rowland* and *J. D. Talbott,* for plaintiffs in error.

*Chas. W. Pennel,* for defendants in error.

Opinion by ROSSER, C. This was an action brought in the district court of Washington county by Nannie E. Brown and others against R. O. Trent and others. The petition alleged that plaintiffs were the owners of certain land situated in Washington county, which they inherited from M. R. Brown, who was the husband of Nannie E. Brown and the father of the other two plaintiffs; that plaintiffs were, at all times mentioned in the petition, in the exclusive possession of the land; that the defendants Roy D. Palmer and R. O. Trent had caused to be filed of record in Washington county two deeds affecting the title to the land, one dated March 12, 1907, filed for record November 9, 1907, purporting to be executed by Mollie K. Trent, a widow, and Annie Borrowman and Catherine Brown, minors, by their guardian, to Roy D. Palmer, and one purporting to be dated June 1, 1907, and filed for record November 9, 1907, purporting to be executed by Nannie E. Brown as guardian of Annie Borrowman and Catherine Brown. The petition further alleged that R. O. Trent is the nephew of the plaintiff Nannie E. Brown, and that Roy D. Palmer is the nephew by marriage of Nannie E. Brown; that Nannie E. Brown has known Palmer and Trent for many years, and on account of the relationship has had,

at all times mentioned in the petition, full confidence in their integrity and business capacity; that about the 12th of March, 1907, Palmer and Trent represented to Nannie E. Brown that it would be to the interest 'of her children, Annie Borrowman and Catherine Brown, if she would sign away her dower right to the land described for the purpose of platting the land and selling the same for town-site purposes; that Palmer and Trent fraudulently represented to her that she was merely signing a waiver of her dower rights, and that nothing further was intended to be conveyed by the deed, and that if she would execute the deed the land could be placed on the market and a large sum realized.

The petition alleged that Nannie E. Brown was unacquainted with business methods and unacquainted with the truth or falsity of the statements, and that she relied upon the representations made to her, and relying thereon signed the instrument or purported deed; that she has never received any consideration whatever for the execution of the deed; and that there was no agreement that she should receive any consideration therefor. The petition further alleged that about the 1st of June, 1907, Palmer and trent represented to her that there was some irregularity in the instrument she had signed, and that it was necessary for her to sign another in order that her dower rights might be duly relinquished, and the plans for selling the lots might be carried out, and that, still relying upon their statements, and being entirely ignorant of the matter, she signed some instrument which she was later informed was a deed. She alleges that Palmer and Trent never informed her that there was any proceedings in the probate court relating to the sale of her children's interest in the land, and that she never heard of the sale through the probate court until long after the transaction took place; that she has never received any consideration for the execution of her personal deed or the deed as guardian; and that there was never any understanding, either express or implied, by which she was to receive any consideration. The petition further alleged that the plaintiff Catherine Brown reached majority on the 27th day of January, 1909, and that Annie Borrowman reached majority

on the 13th of April, 1907. The petition further alleged that
there appears of record in the county court of Cherokee county
an order of court purporting to be an order of the United States
Court for the Northern Judicial District of the Indian Territory,
sitting at Tahlequah; that said order is invalid and should be
canceled, because the court was without jurisdiction to sell or
authorize the sale of Annie Borrowman's interest in the land,
because she was of full age at the time it was made; that the
order approving the sale is invalid for the same reason; that all
the proceedings leading up to the sale are fictitious, false, and
fraudulent, and without the knowledge of the guardian, and
against the interests of the minors; and that the statutes of Ar-
kansas affecting the sales of land were in no respect complied
with. The petition alleged further that Palmer attempted to
convey the land to Trent by deed, and that Trent took the deed
with full knowledge of all the facts and circumstances already
mentioned; that Trent, by pretended mortgage, attempted to
mortgage the interest of the plaintiffs to the Western Bank &
Trust Company of Amarillo, Texas; that the bank took the
mortgage while the plaintiffs were in full and exclusive posses-
sion of the land, and with actual and constructive knowledge of
the claim of plaintiffs. It concluded with a prayer that all the
deeds be set aside, and that the order confirming the sale be
set aside, and that the mortgage be canceled and set aside, and
that all the defendants be enjoined from setting up further claim
to the land, and that the court make such other proper orders as
will give the plaintiffs full and equitable relief in the premises,
and for costs of suit and general relief.

The defendants demurred to this petition for the reasons:
First. That it did not state facts sufficient to constitute a cause
of action. Second. That the court was without jurisdiction.
Third. That there was defect in parties plaintiff and defendant.
The court sustained the demurrer, and the plaintiffs elected to
stand upon their petition, whereupon judgment was rendered in
favor of the defendants, and plaintiffs have appealed.

The question presented in briefs of counsel is as to the juris-
diction of the district court over the action.

This case seems to have been decided upon the ground that the district court of Washington county was without jurisdiction to set aside the order of sale, and the order confirming the sale made by the United States Court for the Northern Judicial District of the Indian Territory prior to statehood, and it is urged on the part of defendants that this is a collateral attack upon the judgment of that court which cannot be made in the district court. In this the defendants are mistaken. This proceeding is a direct attack upon that judgment. It is a suit, one of the ultimate purposes of which is to set aside the order of sale and the order confirming the sale. *Bergin v. Haight,* 99 Cal. 52, 33 Pac. 760; *Campbell-Kawannanakoa v. Campbell,* 152 Cal. 201, 92 Pac. 184. It is alleged that the orders were procured by fraud, and a portion of the prayer is that they be canceled and set aside.

A collateral attack is an objection, incidentally raised in the course of the proceeding, which presents an issue collateral to the issues made by the pleadings. For instance, if the parties in this action were reversed and the purchaser at the guardian's sale had brought suit for the possession, relying upon the title bought as shown by the record, and the ward, without alleging the invalidity of the judgment and praying for its cancellation, had objected to its introduction in evidence and offered to prove in support of the objections that the orders were procured by fraud, that would have been collateral attack. An issue collateral to the pleadings would have been tendered. Even in that sort of an action, if the defendant, by cross-petition, had set up the fact that the judgment on which plaintiff relied was procured by fraud, and had prayed to have it canceled, it would have been a direct attack, and evidence would have been admitted to sustain the cross-petition. See *Southern Pine Lumber Co. v. Ward,* 16 Okla. 131, 85 Pac. 459.

In *Burke v. Interstate Savings & Loan Ass'n,* 25 Mont. 315, 64 Pac. 879, 87 Am. St. Rep. 416, the court said:

"By 'collateral attack' * * * is meant every proceeding in which the integrity of the judgment is challenged, except those made in an action wherein the judgment is rendered or by

appeal, *and except suits brought to obtain decrees declaring judgments to be void ab initio.*" (Italics ours.)

See, also, *Morrill v. Morrill,* 20 Ore. 96, 25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95; *Smith v. Morrill,* 12 Colo. App. 233, 55 Pac. 824. This suit, so far as its affects the proceedings in the probate court, was brought for the purpose of having them declared void *ab initio.* See, also, *Continental Gin Co. v. De Bord,* 34 Okla. 66, 123 Pac. 159; *Hefferman v. Ragsdale,* 199 Mo. 375, 97 S. W. 890; *McCampbell v. Durst,* 73 Tex. 410, 11 S. W. 380; *Penrose v. McKenzie,* 116 Ind. 35, 18 N. E. 384; Hughes, Gr. & Rud. of Law.

Expressions will be found indicating that an attack upon the judgment by an independent suit and not by an appeal is a collateral attack; but those expressions are inaccurate. They will be found in cases where suits have been brought to cancel or set aside judgments for irregularities in the proceeding, where the court had jurisdiction, and where there is no proof of fraud, mistake, or accident by which a party was prevented from having a fair hearing. It is the law that such judgment cannot be canceled and set aside for such irregularities in an independent suit brought for that purpose, not because a suit for that purpose is a collateral attack, but for the reason that mere irregularities are waivable, and, unless the proper steps are taken to correct them in the suit, action, or proceeding where they occur, they are waived. Where parties have been brought into court in the proper way, it is their duty to object to irregularities and to take proper steps by appeal or otherwise to have them corrected. That is their legal remedy. Courts of equity do not lend their jurisdiction to the correction of irregularities.

"Error in form only, though apparent on the face of the decree, and mere matters of abatement, seem not to have been considered sufficient ground for review." (Adams, Equity, p. 417; *Guerry v. Perryman,* 12 Ga. 14.)

The party complaining of irregularities, having had his remedy at law by appeal and not having availed himself of it, will be denied relief in equity. See *Budd v. Long,* 13 Fla. 288.

But an attack upon a judgment for fraud in its procurement is a direct attack over which courts of equity take jurisdiction,

and no well-considered case can be found in which such jurisdiction is denied.   See *Sharp v. Danville, etc., R. Co.,* 106 N. C. 308, 11 S. E. 530, 19 Am. St. Rep. 533; *Uzzle v. Vinson,* 111 N. C. 138, 16 S. E. 6.

The case of *Bergin v. Haight,* 99 Cal. 52, 33 Pac. 760, was a suit brought to quiet title, in which it was attempted to cancel a probate sale upon the ground of fraud.   The court took jurisdiction and canceled the sale upon that ground.   See, also, *Coffey v. Greenfield,* 62 Cal. 602; *Reed v. Bank of Ukiah,* 148 Cal. 96, 82 Pac. 845; *Lataillade v. Orena,* 91 Cal. 565, 27 Pac. 924, 25 Am. St. Rep. 219; *Fincke v. Bundrick,* 72 Kan. 182, 83 Pac. 403, 4 L. R. A. (N. S.) 820.   The cases are very rare, and the circumstances very unusual, when the jurisdiction of a court of equity to cancel any sort of contract or judgment procured by fraud cannot be invoked.   1 Story Eq. (13th Ed.) 194.

Not that every kind of fraud will vitiate a judgment.   There are authorities holding that a judgment or verdict obtained on perjured testimony can be set aside in equity; but this is not believed to be the law.   To investigate the character of testimony upon which a judgment was obtained would be to retry the issues submitted in the trial at which the judgment was obtained, and the result would be that there would be no end to the litigation.   The fraud which will vitiate a judgment must be extraneous to the issues and such as deprived the party of a fair opportunity to present his case.

In *United States v. Throckmorton,* 98 U. S. 61, 25 L. Ed. 93, Mr. Justice Miller said:

"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open

the case for a new trial and a fair hearing. See Wells, Res Adjudicata, sec. 499; *Pearce v. Olney*, 20 Conn. 544; *Wierich v. De Zoya*, 2 Gilman (7 Ill.) 385; *Kent v. Ricards*, 3 Md. Ch. 396; *Smith v. Lowry*, 1 Johns. Ch. [N. Y.] 320; *De Louis v. Meek*, 2 G. Greene (Iowa) 55 [50 Am. Dec. 491]."

See, also, *Pico v. Cohn*, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 13 L. R. A. 336, 25 Am. St. Rep. 159; *Amador C. & M. Co. v. Mitchell*, 59 Cal. 169; *In re Griffith*, 84 Cal. 107, 23 Pac. 528, 24 Pac. 381; *Ross v. Wood*, 70 N. Y. 8; *Wonderly v. Lafayette County*, 150 Mo. 635, 51 S. W. 745, 45 L. R. A. 368, 73 Am. St. Rep. 474; *Payne v. O'Shea*, 84 Mo. 129.

The dignity or rank of the court which sold the land as being a United States court or otherwise had nothing to do with the question. *Horan v. Wahrenberger*, 9 Tex. 313, 58 Am. Dec. 145; *Wonderly v. Lafayette County*, 150 Mo. 635, 51 S. W. 745, 45 L. R. A. 386, 73 Am. St. Rep. 474. In *Voorhees v. Bank*, 10 Pet. 449, 9 L. Ed. 490, Mr. Justice Baldwin said:

"If not warranted by the Constitution or law of the land, our most solemn proceedings can confer no right which is denied to any judicial act under color of law, which can properly be deemed to have been done *coram non judice*; that is, by persons assuming the judicial function in the given case without lawful authority."

See, also, *Williamson v. Berry*, 8 How. (U. S.) 540, 12 L. Ed. 1170; *Marshall v. Holmes*, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870.

Fraud vitiates everything founded upon it, and when the fraud is established no court will give effect to a judgment so procured. In one sense it is not a judgment at all. *Grantham v. Kennedy*, 91 N. C. 148. The presumption is that the judgment would not have been rendered if the court rendering it had not been imposed upon, and the presumption applies with equal weight to the judgment of the highest and lowest court.

An action to quiet title must be brought in the county where the land is situated. Comp. Laws 1909, sec. 5580. It might often happen, just as in this case, that unless the action to quiet title could be brought in a county other than the one in which a sale was fraudulently obtained, a person whose title had been clouded

by such sale would be without remedy. Especially would that be true in Oklahoma, where several counties were created out of what had before been the jurisdiction of a single county, and where, even since statehood, unfortunately, in the opinion of the writer, county boundaries are subject to change for insufficient reasons or without any reason at all.

In *Wonderly v. Lafayette County,* 150 Mo. 635, 51 S. W. 745, 45 L. R. A. 386, 73 Am. St. Rep. 474, the court said:

"The point is advanced in plaintiff's brief that a judgment can be overruled on the ground that it was obtained by fraud only in the court in which it was rendered. But there is no foundation in reason or authority for that proposition, and the contrary has been declared in *Marx v. Fore,* 51 Mo. 69, 11 Am. Rep. 432; *Payne v. O'Shea,* 84 Mo. 129; *Doughty v. Doughty,* 27 N. J. Eq. 315; Pom. Eq. Juris. sec. 919."

The jurisdiction of a court, in a suit to quiet title, to cancel a judgment obtained by fraud, has been exercised in numerous cases. See *Johnson v. Johnson,* 30 Ill. 215; *Tucker v. Conwell,* 67 Ill. 552; *Conwell v. Watkins,* 71 Ill. 488; *England v. Lewis,* 25 Cal. 337; *In re Estate of Hudson,* 63 Cal. 454; *Bergin v. Haight,* 99 Cal. 52, 33 Pac. 760; *Barton v. Drake,* 21 Minn. 299; *O'Hare v. Downing,* 130 Mass. 16; *Hall v. Whiston,* 5 Allen (87 Mass.) 126; *Mayberry v. McClurg,* 51 Mo. 256; *Kittles v. Williams,* 64 S. C. 229, 41 S. E. 975. See *Tyson v. Brown,* 64 Ala. 244. The inherent jurisdiction of a court of equity to quiet title and to remove a cloud therefrom was asserted in *Love v. Cavett,* 26 Okla. 179, 109 Pac. 553.

Section 5548, Comp. Laws 1909, recognizes actions to recover real property sold by executors, administrators, and guardians, and, if such action would lie, undoubtedly a suit to quiet title, where the minor has remained in possession, will also lie. The court had jurisdiction in this case.

It is not intended to hold that all of the jurisdiction to entertain bills of review and other proceedings in the nature of motions for new trial, or to review the proceedings of the trial court, at one time vested in courts of equity, still exists in the courts of this state. The following quotation from Pomeroy's Eq. Juris. sec. 1365, is believed to state the law as it is here:

"The result is, in my opinion, that practically the only jurisdiction now exercised by courts of equity to enjoin judgments at law, where no equitable right or interest is involved in the controversy, on account of wrongful acts or omissions connected with the trial, is a part of and incidental to the broad jurisdiction which equity possesses to set aside and cancel judgments, deeds, contracts, and the like which have been obtained through fraud, undue influence, or mistake. A court of equity, in general, no longer assumes control over a legal judgment for the purpose of a new trial or any similar relief; it will, in a proper case of fraud or mistake, set aside such judgment; and wherever it will grant this final remedy it will, as a preliminary and incidental relief, restrain by injunction all proceedings upon the judgment."

In *Vilas v. Butler,* 123 N. Y. 440, 25 N. E. 941, 9 L. R. A. 844, 20 Am. St. Rep. 771, the court said:

"The jurisdiction of a court of equity to set aside a judgment at law obtained by fraud or on other grounds of equitable cognizance has been oft asserted, and is unquestioned, and it is not necessary now to deny that under special circumstances, where the question of the unauthorized appearance is complicated with fraud or the rights of purchasers, or the circumstances are such that the court can see that the right to or measure of relief cannot properly be determined on motion, having regard to all interests affected, resort may be had to a bill in equity or now in this state to an equitable action."

The only question argued in the briefs of counsel is that the district court of Washington county was without jurisdiction, but it is suggested that the petition does not state a cause of action. If this is true, the demurrer was properly sustained, and the error of the court in holding that it was without juris· diction was immaterial.

The petition refers to a deed by Nannie E. Brown conveying her right to an individual interest, and alleges that Trent is her nephew and Palmer her nephew by marriage; that she had known them for years and had confidence in their integrity and business capacity; that they represented to her that the instrument she signed was a relinquishment of a dower right for the purpose of placing the land on the market and selling it as a town site, whereby a large sum could be obtained for her and her children; that they paid her nothing for the deed; and that

she knew nothing about such matters and relied upon their advice. This states a cause of action as to her deed. *Heitsman v. Windahl,* 125 Iowa, 207, 100 N. W. 1118; *First Nat. Bank v. Deal,* 55 Mich. 592, 22 N. W. 53; *Cole Bros. v. Williamson,* 12 Neb. 440, 11 N. W. 875; *Smith v. Smith,* 134 N. Y. 62, 31 N. E. 258, 30 Am. St. Rep. 617; *Kilmer v. Smith,* 77 N. Y. 226, 33 Am. Rep. 613. Where a person signs an instrument without reading it, the law will not permit him to introduce evidence that he did not know what it contained. The reason usually given is that he has been guilty of negligence in not informing himself. But when the opposite party has been guilty of some positive fraud, has done or said something capable of proof which has prevented the maker from informing himself, the instrument can be set aside for the fraud.

In the case of *Albany City Savings Institution v. Mary D. Burdick,* 87 N. Y. 40, the court said:

"Where one sues another for negligence, his own negligence contributing to the injury will constitute a defense to the action; but where one sues another for a positive, willful wrong or fraud, negligence by which the party injured exposed himself to the wrong or fraud will not bar relief. If the rule were otherwise, the unwary and confiding, who need the protection of the law most, would be left a prey to the fraudulent and artful practices of the evil-doer."

A man cannot be heard to say, "I lied, but you should not have believed me."

It is alleged, also, that no consideration was paid or agreed to be paid. Inadequacy of price, if gross, is itself evidence from which fraud may be inferred. Pomeroy's Eq. Juris. secs. 927-928; *Stephens v. Ozbourne,* 107 Tenn. 572, 64 S. W. 902, 89 Am. St. Rep. 957.

The allegations with reference to the guardianship deed are that she did not know of the proceeding in the probate court, and that no consideration was paid her or her children for the land; that, if she signed any instrument in connection with the probate sale, her signature was obtained by fraud. This states a cause of action as to the deed. The allegation that she did not know of the proceeding was a sufficient allegation of fraud. The

fact that no consideration was paid was also a circumstance or matter of inducement bearing on the question of fraud.

If the guardian did not know of the proceedings, and was not in court, the court had no right to act in the matter. The petition for sale must be filed by the guardian.

No court has the right to hear a matter or decide a case unless its action is invoked by a party or actor who comes before it and requests it to exercise its jurisdiction. It is a maxim that the law hears before it decides. There must be some one before the court to whom it may listen. See *Mexican Mill v. Yellow-Jacket Mining Co.*, 4 Nev. 40, 97 Am. Dec. 510. Judicial shams and frauds do not amount to valid judgments. Hughes, Gr. & Rud., sec. 132; *Watkins v. State*, 68 Ind. 427, 34 Am. Rep. 273. The court cannot adjudicate upon a person's rights unless that person is before the court. *California v. Southern Pac. R. Co.*, 157 U. S. 229, 15 Sup. Ct. 591, 39 L. Ed. 683; *Mallow v. Hinde*, 12 Wheat. 193, 6 L. Ed. 599. The purchaser at a guardian's sale has no right to procure the order for his own benefit. *Bergin v. Haight*, 99 Cal. 52, 33 Pac. 760. The court can no more act without a plaintiff than it can without a defendant. It is well settled that a defendant when sued upon a judgment may make the defense that he was not served. In *McArthur v. Scott*, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015, Mr. Justice Gray, speaking for the court, said:

"In every case there must be such parties before the court as to insure a fair trial of the issues in behalf of all."

The same principle would apply in a petition to sell minors' lands. The guardian represents the minors and must know of the proceedings in order to represent their interests. The principle involved has been passed upon in a number of cases. See *Ferguson v. Crawford*, 70 N. Y. 253, 26 Am. Rep. 589; *Hargis v. Morse*, 7 Kan. 415; *Johnson v. Johnson*, 30 Ill. 215. If the grantee in the guardian's deed procured the order of sale without the guardian's knowledge, he perpetrated a fraud on her and the court.

The bill further alleges that the plaintiff, during the proceedings and at the time the Western Bank & Trust Company

took its mortgage, was in possession of the lands, and is still in possession. Possession of real property is constructive notice of the title by which the person in possession holds the land, and a person purchasing land is charged with notice of the rights of persons in possession. *Smith v. Phillips,* 9 Okla. 297, 60 Pac. 117; *Edwards v. Montgomery,* 26 Okla. 862, 110 Pac. 779.

It is not necessary to decide whether the district court of Washington county would have jurisdiction to cancel the order of sale upon the record of the United States Court of the Northern Judicial District of the Indian Territory, at Tahlequah. Courts of equity can vary the remedy to arrive at the proper disposition of the particular case. See *Campbell-Kawannanakoa v. Campbell,* 152 Cal. 201, 92 Pac. 184; *Wonderly v. Lafayette County,* 150 Mo. 635, 51 S. W. 745, 45 L. R. A. 386, 73 Am. St. Rep. 474. In this case plaintiff's remedy, if she establishes the facts alleged in her petition, can be made efficient by a judgment properly recorded in Washington county, canceling the order of sale, so far as it affects the land in Washington county, and enjoining the parties claiming under the fraudulent judgment from further attempting to assert rights under it.

The judgment of the lower court should be reversed, and the cause remanded.

By the Court: It is so ordered.